25921. BRADFIELD v. HOSPITAL AUTHORITY OF MUSCOGEE COUNTY et al.

ARGUED JUNE 9, 1970—DECIDED JULY 9, 1970.

*Owens, Littlejohn & Gower, J. Walter Owens,* for appellant.

*Hatcher, Stubbs, Land, Hollis & Rothschild, Howell Hollis, King & Spalding, Charles L. Gowen, Pope B. McIntire, Daniel J. O'Connor, Jr.,* for appellees.

FELTON, Justice. 1. The thrust of appellant's contention with regard to enumerated error 1 is that there is no guaranty that the hospital, after its lease and ultimate sale to the private hospital corporation, will continue to be operated with the public purpose of promoting the public health of the community as its overriding and paramount purpose and no guaranty that the benefit to the private lessee would not be more than an incidental benefit.

". . . [H]ospitals, whether owned directly by a county or city, or by an authority, are designed and intended to serve identical purposes of discharging the governmental obligation to provide for the health of the people." *Undercofler v. Hospital Authority of Forsyth County,* 221 Ga. 501, 503 (145 SE2d 487) ; *Beazley v. DeKalb County,* 210 Ga. 41, 47 (77 SE2d 740). Under the Hospital Authorities Law, this governmental obligation can be discharged by the acquisition of existing hospital facilities, as is here proposed (as well as by the construction of completely new hospitals) and by the sale or lease of the hospital to others, as is also here proposed (as well as by the Hospital Authority's operation thereof). *Code Ann.* § 88-1805 (Ga. L. 1964, pp. 499, 601, as amended). There is no apparent reason why a suitable private corporation could not properly operate the hospital, either as lessee or as owner, so as to likewise promote the public health functions of government.

"In general, the nature of the corporation, as well as its purpose and objects, must be determined from its charter or articles

of association. . ." 14 CJS 418, Charities, § 2, citing *Morton v. Savannah Hospital,* 148 Ga. 438, 439 (96 SE 887). Article 3 of the restated articles of incorporation of the hospital states, in part, as follows: "The purposes for which the corporation is organized are to further the cause of religion, education, *and charity.* . ." (Emphasis supplied.) Article 5 provides: "The corporation has no capital stock and is not organized and *shall not be operated for pecuniary gain or profit.*" (Emphasis supplied.) In paragraph 5 of appellant's complaint it is alleged that ". . . plaintiff does not dispute that lessee [hospital] is operating and will, *after the execution and delivery of the proposed lease agreement,* continue to operate the hospital *in accordance with the provisions of its corporate charter and bylaws.*" (Emphasis supplied.)

As to the control over the hospital's policies during the term of the lease, the lessee will covenant in section 20 (e) of the lease agreement to maintain its existence as a non-profit corporation and its exempt status from Federal, State and local income taxes. Furthermore, the Hospital Authorities Law is replete with safeguards and controls on the operation of the hospital to insure that the public interest in the hospital, including the care of indigents, is protected. The law provides for the county or any city or municipality therein to contract with the Authority to obtain the use of the facilities for the medical care and hospitalization of their indigent sick, and for such governments to pay therefor "such sums as shall be necessary to provide adequate and necessary facilities . . . including reasonable reserves necessary for expansion and necessary for the payment of the cost of facilities of the projects. . ." *Code Ann.* § 88-1813 (Ga. L. 1964, pp. 499, 607, as amended). The non-profit operation is assured by the provisions of *Code Ann.* § 88-1805 (Ga. L. 1964, pp. 499, 601; as amended), *Code Ann.* § 88-1806 (Ga. L. 1964, pp. 499, 602) and *Code Ann.* § 88-1820 (Ga. L. 1964, pp. 499, 609, as amended, Ga. L. 1969, pp. 805, 806), and *Code Ann.* §§ 88-1821, 88-1822 and 88-1823 provide for annual audits of the Authority.

Regarding the control over the hospital's policies after its sale back to the private hospital corporation, although the covenant in the lease to maintain the charitable, non-profit existence of the corporation may or may not have been intended to apply after the sale, we think there is legal, as well as moral, justification for considering such agreement binding thereafter since the taxpaying citizens, through the Hospital Authority, would have operated it thusly up until that time with the intention, and corresponding obligation, that it continue to be thusly operated. Their use of the Authority's organization and method of financing and funding is ample consideration for the agreement. Even if this matter were not contractually guaranteed, however, as a practical matter it can be exercised by the State Department of Health, which has the authority to revoke permits for the operation of hospitals for violation of rules and regulations prescribed by the Department for reasonable minimum requirements for operation, which, presumably, would include the treatment of indigent patients. *Code Ann.* § 88-1906 (Ga. L. 1964, pp. 499, 613). Moreover, failure to operate the non-profit hospital corporation in accordance with the provisions of its articles of incorporation, hereinabove set forth, would subject the corporation to a loss of its charter by involuntary dissolution. *Code Ann.* §§ 22-2201 and 22-3108 (Ga. L. 1968, pp. 565, 735, 770).

Even if the hospital should decline to care for persons *in their status as indigents,* however, there is nevertheless a provision for their treatment. Under *Code Ann.* § 88-1812 (Ga. L. 1964, pp. 499, 606, as amended), the county or its cities or towns are authorized to provide for care for indigents by use of their general funds or by levying a special ad valorem tax for this purpose. Use of such public funds for the treatment of indigent patients in a private hospital is not unconstitutional. It has been stated above that the operation of a hospital, even a privately-owned one, is in the public interest. Promotion of the public health constitutes a public purpose for which the powers of taxation can be exercised lawfully by the State (Ga. Const. 1945, Art. VII, Sec. II, Par. I; *Code Ann.* § 2-5501 (9)) and by the counties (Const., Art. VII, Sec. IV, Par. I; *Code Ann.* § 2-5701). *Beazley v. DeKalb County,* 210 Ga. 41, 47, supra.

Hence, under the general taxing power of the county for the purpose of public health, the county could still provide its indigent sick the funds with which to obtain treatment, even if not by contract with the hospital, so that, from the hospital's viewpoint they would no longer be classified as indigents.

Even assuming further, that the hospital should become unable or unwilling to adequately perform its public health role in the community after the private corporation assumes its ownership, neither the State nor any of its subdivisions would sustain a monetary loss therefrom, since the cost of the project will have been fully recovered out of the income from its operation.

Enumerated error 1 is without merit.

2. Enumerated errors 2, 4 and 5 all attack the constitutionality on various grounds of the tax exemptions and exclusions of the Hospital Authority (*Code Ann.* § 88-1803; Ga. L. 1964, pp. 499, 599, as amended), and its revenue anticipation certificates (*Code Ann.* § 88-1808; Ga. L. 1964, pp. 499, 603).

Section 20 (d) of the proposed lease from the Hospital Authority to St. Francis Hospital, Inc. provides that "[t]he lessee will pay, as the same respectively become due, all taxes and governmental charges *of any kind whatsoever* that may at any time be *lawfully* assessed or levied against or with respect to the Project . . ." (emphasis supplied), and permits the lessee to contest the validity of any such assessments. Since the lease has not yet been executed, no taxes have been assessed, and it can not be determined at this time whether any taxes will be assessed against the project, it is impossible to rule now upon the constitutionality of any tax exemptions which may or may not be allowed at some time in the future under the law as it will then exist. At such time as such exemptions or exclusions are actually allowed, appellant, or other taxpayers, can contest their constitutionality under the then-existing law. The allegations to the effect that the Authority is about to enter upon a project that may not be in keeping with the law do not show cause for injunctive relief in favor of the plaintiff as a taxpayer. *Stegall v. Southwest Ga. Regional Housing Authority*, 197 Ga. 571, 587 (30 SE2d 196).

These enumerated errors are without merit.

3. The proposed project would not violate the provisions of *Code Ann.* § 2-5604 (Const. 1945, Art. VII, Sec. III, Par. IV), since revenue certificates issued by a State Authority are not obligations or debts of the State, nor a pledge of the credit of the State, but are a corporate debt of the Authority. *Sigman v. Brunswick Port Authority,* 214 Ga. 332, 334 (104 SE2d 467) and cit. In accordance with the above, *Code Ann.* § 88-1808 (Ga. L. 1964, pp. 499, 603) provides in part as follows: "The certificates and other obligations of an Authority shall not be, and shall so state on the face thereof, a debt of the city, the county, the State of Georgia, nor any political subdivision thereof, nor of any combination of subdivisions acting jointly as hereunder provided." Enumerated error 3 is without merit.

4. Nor is there here involved any violation of the provisions of *Code Ann.* § 2-5801 (Const. 1945, Art. VII, Sec. V, Par. I), which are, in part, as follows: "The General Assembly shall not authorize any *county, municipal corporation* or *political division of this State,* through taxation, contribution or otherwise, to become a stockholder in any company, corporation or association, or to appropriate money for, or to loan its credit to any corporation, company, association, institution or individual *except for purely charitable purposes.*" (Emphasis supplied.) Even assuming that a "purely charitable purpose" does not exist in this case, the Hospital Authority, which is the organization authorized by the General Assembly to administer the funding of the project, is not a "county, municipal corporation or political division of this State." *Richmond County Hospital Authority v. McLain,* 112 Ga. App. 209 (144 SE2d 565) and cit. Enumerated error 6 is without merit.

5. The proposed project and the law authorizing it are not in contravention of *Code Ann.* § 2-114 (Const. 1945, Art. I. Sec. I, Par. XIV), which provides: "No money shall ever be taken *from the public treasury,* directly, or indirectly, in aid of any church, sect, or denomination of religionists, or of any sectarian institution." (Emphasis supplied.) The money funding the project comes, not from the public treasury, but from the sale of the revenue anticipation certificates of the Authority, which, as hereinabove stated, constitutes a corporate debt of the

Authority and not of the State or any of its political subdivisions. Enumerated error 7 is without merit.

The pleadings and affidavit on file show that there is no genuine issue as to any material fact, that appellant is not entitled to the injunctive relief sought and that movant was entitled as a matter of law to the summary judgment granted by the trial court.

*Judgment affirmed. All the Justices concur.*