S93A1924. THOMAS v. HOSPITAL AUTHORITY OF
CLARKE COUNTY.
(440 SE2d 195)

HUNT, Presiding Justice.

On January 10, 1991, Brenda Thomas slipped and fell on the premises of the Hospital Authority of Clarke County (hereinafter Hospital Authority). Thomas brought an action against the Hospital Authority seeking damages for permanent injury. The trial court granted the Hospital Authority summary judgment on the grounds that Thomas' action was barred because of sovereign immunity. We reverse.

Under Art. I, Sec. II, Par. IX (e) of the Georgia Constitution, "sovereign immunity extends to the state and all of its departments and agencies." Thomas argues that the Hospital Authority is not enti-

tled to the protection afforded by the doctrine of sovereign immunity because the Hospital Authority is not the state, or a department or agency of the state. We agree.

In *Hosp. Auth. of Fulton County v. Litterilla,* 199 Ga. App. 345 (404 SE2d 796) (1991), the Court of Appeals held, in part, that a hospital authority is a governmental entity entitled to the defense of sovereign immunity. In reviewing that case, this Court refused to affirm that holding, confining our review to the specific question posed in the writ of certiorari[1] and acknowledging that "there is arguable merit to the position that hospital authorities are not entitled to assert sovereign immunity." *Litterilla v. Hosp. Auth. of Fulton County,* 262 Ga. 34, fn. 1 (413 SE2d 718) (1992). We now address that issue and hold that hospital authorities, because they are neither the state nor a department or agency of the state, are not entitled to the defense of sovereign immunity. Our conclusion is based on precedents of this Court and of the Court of Appeals, as well as policy considerations.

1. In earlier cases, we have applied a narrow definition in determining what constitutes the state or a political division thereof, distinguishing the state and its political subdivisions from instrumentalities created by the state to carry out various functions.[2] The Court of Appeals followed this analysis in *Richmond County Hosp. Auth. v. McLain,* 112 Ga. App. 209 (144 SE2d 565) (1965). In that case, the Court noted that there is a clear distinction between a political subdivision such as a county and a corporate body such as a hospital authority, which is a creation of the county. Statutes such as those providing for hospital authorities are intended to allow a county to create public agencies having a corporate entity, so as to contract with the county, but without those powers which "are generally inherent in the concept of a political subdivision." 112 Ga. App. at 212. Accordingly, the Court of Appeals held that

neither the language of [the Code section] which refers to a hospital authority as a "body corporate and politic" nor that which assigns to it "public and essential governmental functions" is sufficient to constitute it a political division of the

---

[1] In granting certiorari, this Court asked:
Does the existence of the liability trust fund which protects the Hospital Authority of Fulton County result in a waiver of the authority's sovereign immunity, *assuming* that hospital authorities are entitled to such immunity?
(Emphasis supplied.)

[2] See, e.g., *Stegall v. Southwest Ga. Housing Auth.,* 197 Ga. 571 (4) (30 SE2d 196) (1944) (housing authority not a political division under the housing act); *Sheffield v. State School Bldg. Auth.,* 208 Ga. 575, 583 (68 SE2d 590) (1952) (school authority is not "the State, or a part of the State or an agency of the State"); *McLucas v. State Bridge Bldg. Auth.,* 210 Ga. 1 (77 SE2d 531) (1953) ("[w]hile the Authority is an instrumentality of the State, it is nevertheless not the State, nor a part of the State, nor an agency of the State").

State,

112 Ga. App. at 211-212, and this holding met with the approval of this Court in *Bradfield v. Hosp. Auth. of Muscogee County*, 226 Ga. 575, 587 (176 SE2d 92) (1970). Further, it is irrelevant that the hospital authority is an instrumentality created by a department or agency of the state, i.e., the county. See, e.g., *Toombs County v. O'Neal*, 254 Ga. 390 (330 SE2d 95) (1985). As we said in *Cox Enterprises v. Carroll City/County Hosp. Auth.*, 247 Ga. 39, 45 (273 SE2d 841) (1981), our prior holding

> that a state authority is "not the State, nor a part of the State . . . [but] . . . a mere creature of the State, having distinct corporate entity" applies with full force to [a hospital authority] as well, after substituting "city/county" for "state." It is clearly not a municipal corporation as such, or a county, but merely their instrumentality. And it is not their instrumentality in the sense that a department or an agency might be because it is a separate corporate entity. [Cit.]

Making the suggested substitution, it is clear that a hospital authority is not only not the state or a part of the state, it is also not the county or a part of the county. In reaching its determination that a hospital authority is entitled to the protection of sovereign immunity, the Court of Appeals in *Litterilla* relied on the language of OCGA § 31-7-75 which characterizes the activities of a hospital authority as "essential governmental functions," but such reliance is misplaced. Since a hospital authority, though an instrumentality of government, is not, in any sense, an agency or department of the state, the nature of its function is irrelevant; it is not, by the language of the statute, entitled to the protection of sovereign immunity.

2. Policy considerations also support our conclusion that hospital authorities are not entitled to sovereign immunity. First, the functions carried on by a hospital authority are simply not those functions which the doctrine of sovereign immunity was designed to protect. One of the purposes of sovereign immunity in our country has been to allow government to go about the business of governing without the harassment of lawsuits which would unnecessarily impede the process of governing. The doctrine was accordingly applied only to those activities which could be said to constitute the process of governing, and the doctrine, applied as it was in such a narrow fashion, provided much more relief and produced far less harsh results than it has in more recent times.[3] Today, as many courts have acknowledged, gov-

---

[3] *Muskopf v. Corning Hosp. District*, 359 P2d 457 (Calif. 1961). This case provides a

ernment engages in a great many things that are not strictly governmental.[4] While some courts have attempted to distinguish between "governmental" and "proprietary" functions,[5] a distinction which is, as we stated above, irrelevant in this case, we believe that the operation of a hospital is not the kind of function, governmental or otherwise, entitled to the protection of sovereign immunity. The very functions performed by the Hospital Authority are performed by private hospitals and the Hospital Authority is in direct competition with these private hospitals for patients.[6] If an instrumentality of the government chooses to enter an area of business ordinarily carried on by private enterprise, i.e., engage in a function that is not "governmental," there is no reason why it should not be charged with the same responsibilities and liabilities borne by a private corporation. Nor is there any reason why those individuals who do business with that instrumentality should be accorded less protection than they would have in a facility run by a private corporation.[7]

Secondly, though one purpose of the doctrine of sovereign immunity is to "preserve the protection of the public purse," *Martin v. Ga. Dept. of Public Safety*, 257 Ga. 300, 301 (357 SE2d 569) (1987), to extend the doctrine to a hospital authority would do nothing to advance this intent. Application of the doctrine of sovereign immunity has always involved the balancing of the interests of persons injured

---

brief but informative summary of the historical origins of the doctrine.

[4] See, e.g., *Carroll v. Kittle*, 457 P2d 21, 26 (Kan. 1969). ("At the time the rule of governmental immunity was adopted the courts could not have come close to imagining all of the proprietary functions in which the government and its agencies are now engaged.")

[5] See *Standiford v. Salt Lake City Corp.*, 605 P2d 1230 (Utah 1980), for a case which sets forth a definition which, it claims, abandons the governmental/proprietary quagmire (test for determining governmental immunity is whether the activity under consideration is of such a unique nature that it can only be performed by a governmental agency or that it is essential to the core of governmental activity).

[6] That the function of a hospital is not, in essence, a governmental function is made apparent by our holding in *Richmond County Hosp. Auth. v. Richmond County*, 255 Ga. 183, 184 (336 SE2d 562) (1985), wherein we reiterated the holding in *Bradfield v. Hosp. Auth. of Muscogee County*, supra, that there is no apparent reason why a suitable private corporation could not properly operate a hospital, either as lessee or owner, so as to promote, in the same way as a hospital authority, the public health functions of government. As another jurisdiction has phrased it:

> while it may be an appropriate goal or objective of government to establish a hospital authority, it does not follow that the daily operations of such a hospital authority constitute a governmental function. Governmental functions more properly refer to the tasks of governing. There is, for example, a governmental character to activities such as the collection of taxes or the operation of a court system. But the services of healing offered by a public hospital are not governmental functions.

*Lykins v. Peoples Community Hosp.*, 355 FSupp. 52, 53 (E.D. Mich. 1973).

[7] Thomas also argues that insulating a hospital authority from tort liability while allowing suit against a private hospital is a violation of equal protection. Our disposition of the issue makes it unnecessary to address this argument.

by government's wrongdoing and the interests of the taxpayers.[8] Where there is little if any impact on the taxpayers, as is the case here, the scale tips compellingly to the side of those who have been injured. A hospital authority is a business corporation authorized and able, as are private hospitals, to provide itself with insurance and of satisfying judgments against it without affecting the stability of the state treasury. Given the economic realities, i.e., the availability of insurance and the ability of the hospital authority to budget the purchase of this insurance, there is no reason to provide a hospital authority with the protection of sovereign immunity.[9]

*Judgment reversed. All the Justices concur, except Hunstein, J., who concurs in the judgment only, and Fletcher, J., who dissents.*

HUNSTEIN, Justice, concurring specially.

I write specially because I cannot agree with the majority that hospital authorities created pursuant to the Hospital Authorities Law are not discharging an essential governmental function. This Court recognized in 1894 that "[i]n the discharge of such duties as pertain to [the preservation of the public health], the State is acting strictly in the discharge of one of the functions of government." *Love v. City of Atlanta*, 95 Ga. 129, 133 (22 SE 29) (1894). The legislature has "since 1792 recognized the duty of the public to provide for the care of the poor, and since 1808 has delegated the performance of this function to [local governmental] agencies." *DeJarnette v. Hosp. Auth. of Albany*, 195 Ga. 189 (7) (23 SE2d 716) (1942). Our Constitution expressly authorizes counties to provide "[p]ublic health facilities and services, including hospitals," Art. IX, Sec. II, Par. III (a) (3), a provision which delegates to counties the authority to discharge "a purely governmental function, affecting the welfare not only of the

---

[8] We note that where property rights are infringed, as in the case of nuisance or "takings," courts have refused to apply the doctrine of sovereign immunity and have held governmental units liable for such infringements. As one writer has observed,

> [t]he shocking effect of the immunity doctrine is well illustrated by the fact that, in the view of some courts, no immunity attaches where property rights are violated by governmental action, but does attach where it is merely a matter of the life or limb of a human being.

25 ALR2d 203, 210.

[9] In this case, the cost of defending the action is being borne by the Hospital Authority's insurance company and the benefits of a decision in favor of the Hospital Authority will inure to the insurance company. In truth, to accord an insured hospital authority the protection of sovereign immunity is to accord that protection to a private entity. As Justice Weltner stated in his special concurrence in *Toombs County v. O'Neal*, 254 Ga., supra at 393:

> the insurer, as a private, for-profit entity, should not be accorded the protection of sovereign immunity, which exists for the benefit of the *public*. Thus, as in this case, when the public utility of sovereign immunity has evaporated, that doctrine should not serve to shield what is purely a private interest.

Such being the case, it is inequitable to ask an individual to bear a heavy if not crippling economic burden when provision has in fact been made for this kind of liability.

citizens resident within its [boundaries] but of all the citizens of the commonwealth generally . . . ." *Love*, supra at 132-133.

The reasons cited by the majority fail to justify disregarding the 200-year-old acknowledgment that the provision of health care to its citizens is one of the basic reasons government exists. *DeJarnette*, supra. As to the majority's "duplication of services" rationale, the mere fact that services performed by a hospital authority are also provided by private-sector enterprises (albeit to a clientele of the private sector's choosing) does not mean an essential governmental function is not being performed, unless this Court wants to apply that same holding to county law enforcement and sanitation departments, whose functions are likewise duplicated in the private sector. As to the economic rationales set forth in the majority opinion, one need only review the statistics brought to this Court's attention in the amicus brief filed by the Fulton-DeKalb Hospital Authority, doing business as Grady Memorial Hospital, to recognize the majority holding's many weaknesses.

The majority opinion ignores constitutional authority, disregards plain language in statutory law,[10] and condemns as mere sophistry this Court's opinions wrestling over the issue whether hospital authorities' sovereign immunity had been waived. See, e.g., *Med. Cntr. Hosp. Auth. v. Andrews*, 250 Ga. 424 (297 SE2d 28) (1982). Its protestations to the contrary, the majority is not just clarifying the law of Georgia: it is *changing* the law to hold, for the first time since the Hospital Authorities Law was first enacted 53 years ago, that the operation of county hospitals is not the kind of governmental function entitled to the protection of sovereign immunity. I do not find that change to be justifiable. Rather, I would hold that the defendant hospital authority, like the county that created it, is entitled to assert the defense of sovereign immunity. However, because I would hold that this defense has been waived to the extent of the defendant hospital's liability insurance, I can concur in judgment only.

DECIDED FEBRUARY 28, 1994 —
RECONSIDERATION DENIED MARCH 18, 1994.

*Walden G. Housman, Jr.*, for appellant.
*Blasingame, Burch, Garrard & Bryant, Gary B. Blasingame, J. Ralph Beaird*, for appellee.

---

[10] OCGA § 31-7-75 states that county-established hospital authorities "exercise public and essential governmental functions."