S94G0735. GILBERT et al. v. RICHARDSON et al.
(452 SE2d 476)

FLETCHER, Justice.

We granted certiorari to determine whether this action against two Walker County officials is barred under the doctrines of sovereign

---

and official immunity. We hold that sovereign immunity is waived to the extent of liability insurance coverage provided by Walker County's participation in the Georgia Interlocal Risk Management Agency (GIRMA) and that official immunity bans the Gilberts' claims against Deputy Sheriff Kathy Richardson. We conclude, however, that her immunity from personal liability does not extend to her employer and that Sheriff Albert Millard may be sued based on the county's waiver of sovereign immunity. Therefore, the Court of Appeals correctly affirmed summary judgment in favor of Richardson, but erred in affirming summary judgment in favor of Millard.

Emma and Tommy Gilbert brought suit against the Walker County sheriff and deputy sheriff seeking damages for injuries sustained in a September 1, 1991 collision with Richardson while she was responding to an emergency call. The Gilberts alleged that while acting within the scope of her employment with the sheriff's department, Richardson operated her vehicle in a negligent, careless, and reckless manner. With regard to Millard, the Gilberts alleged that both he and the sheriff's department were liable and responsible for Richardson's acts as her employer. Millard and Richardson filed a motion for summary judgment asserting, among other things, that Millard was absolutely immune from suit under the doctrine of sovereign immunity and that Richardson was immune from suit under the doctrine of official immunity because she was performing a discretionary function at the time of the accident. The trial court granted summary judgment to Millard and Richardson, holding that sovereign immunity was not waived by virtue of Walker County's participation in GIRMA and that Richardson's actions were discretionary in nature and, therefore, protected under the doctrine of official immunity. The Court of Appeals affirmed. *Gilbert v. Richardson*, 211 Ga. App. 795 (440 SE2d 684) (1994).

1. The common law doctrine of sovereign immunity,[1] adopted by this state in 1784, protected governments at all levels from unconsented-to legal actions. Prince's 1837 Digest, p. 570; *Crowder v. Dept. of State Parks*, 228 Ga. 436, 439 (185 SE2d 908) (1971). The doctrine was given constitutional status in 1974,[2] but the state remained abso-

---

[1] For an in-depth analysis of the origins of the doctrine of governmental (sovereign) immunity, see Borchard, Government Liability in Tort, 34 Yale L.J. 1, 129, 229 (1924) and 36 Yale L.J. 1, 757, 1039, 1928 (1926) and Kramer, The Governmental Tort Immunity Doctrine in the United States 1790-1955, 1966 U. Ill. L.F. 919.

[2] The common law doctrine of sovereign immunity was first modified in Georgia by a 1974 amendment to the 1945 State Constitution, subsequently incorporated in the 1976 State Constitution. This amendment authorized the legislature to waive sovereign immunity, Ga. L. 1973, pp. 1489-1490, but the legislature took no action to provide a waiver of sovereign immunity until the 1983 State Constitution. See *Toombs County v. O'Neal*, 254 Ga. 390, 391 (330 SE2d 95) (1985).

lutely immune from suit until 1983 after voters approved an amendment to the State Constitution waiving the sovereign immunity of the "state or any of its departments and agencies" in actions for which liability insurance protection was provided. Ga. Const. of 1983, Art. I, Sec. II, Par. IX.[3] In 1991, the constitutional doctrine of sovereign immunity was amended to extend sovereign immunity "to the state and all of its departments and agencies," and this immunity is to prevail except as specifically provided therein. Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e). The 1991 amendment governs the Gilberts' cause of action because it arose on September 1, 1991 and the complaint was filed on November 24, 1992. See *Donaldson v. Dept. of Transp.*, 262 Ga. 49, 53 (414 SE2d 638) (1992) (holding the 1991 amendment effective January 1, 1991).

2. In granting summary judgment, the trial court summarily held that sovereign immunity barred the Gilberts' claims against Millard.[4] The Gilberts contend that counties do not come within the definition of "agents or departments of the state" as contemplated by the 1991 amendment but are "autonomous, independent entities within the state politic" to which sovereign immunity does not extend. We do not agree.

The 1991 amendment provides, in pertinent part:

(a) The General Assembly may waive the state's sovereign immunity from suit by enacting a State Tort Claims Act, in which the General Assembly may provide by law for procedures for the making, handling, and disposition of actions or claims against the state and its departments, agencies, officers, and employees, upon such terms and subject to such conditions and limitations as the General Assembly may provide.

. . .

(e) Except as specifically provided in this Paragraph, sover-

---

[3] The 1983 constitutional revision also brought about a second waiver provision authorizing the legislature to "waive the immunity of counties, municipalities, and school districts by law." Ga. Const. of 1983, Art. IX, Sec. II, Par. IX.

[4] Although Walker County is not a named defendant in this action, Millard was sued in his capacity as Walker County sheriff. Accordingly, the Gilberts' claims are, in essence, claims against Walker County and Millard may raise any defense available to the county, including sovereign immunity. See *Price v. Dept. of Transp.*, 257 Ga. 535, 537 (361 SE2d 146) (1987); *Hennessy v. Webb*, 245 Ga. 329, 330 (264 SE2d 878) (1980); see also *Hiers v. City of Barwick*, 262 Ga. 129 (414 SE2d 647) (1992) (both city and chief of police raised defense of sovereign immunity); *Roberts v. Barwick,* 187 Ga. 691, 695 (1 SE2d 713) (1939) (claims against commissioner of agriculture in his official capacity are claims raised against the state and cannot be brought without the state's consent).

eign immunity extends to the state and all of its departments and agencies. The sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver.

The Georgia Tort Claims Act, OCGA §§ 50-21-20 to 50-21-37, was subsequently enacted to waive the sovereign immunity of the state for the torts of its officers and employees but expressly excludes counties from the ambit of this waiver.

In *Toombs County v. O'Neal*, 254 Ga. 390, 391 (330 SE2d 95) (1985), this court held that the 1983 amendment's reservation of immunity to the "state or any of its departments or agencies" included the counties of the State of Georgia. See also *Nelson v. Spalding County*, 249 Ga. 334 (290 SE2d 915) (1982) (extending sovereign immunity to counties under the similar language provided in Art. VI, Sec. V, Par. I of the 1976 State Constitution). The language used in the 1991 amendment is virtually identical to that used in the 1983 amendment to describe the entities to which sovereign immunity applies. With full knowledge of the construction placed upon the similar language of the 1983 amendment, *Poteat v. Butler*, 231 Ga. 187, 188 (200 SE2d 741) (1973), the legislature proposed and the voters of this state ratified the 1991 amendment. Absent any evidence that the legislature intended a different interpretation or to indicate that the electorate did not intend to extend sovereign immunity to counties, we hold the 1991 amendment's extension of sovereign immunity to "the state and its departments and agencies" must also apply to counties. See *Bibb County v. Hancock*, 211 Ga. 429, 432 (86 SE2d 511) (1955); *Thompson v. Talmadge*, 201 Ga. 867, 885 (41 SE2d 883) (1947) (courts should accord virtually identical language in successor provisions the same construction given the original language); see also *Thomas v. Hosp. Auth. of Clarke County*, 264 Ga. 40 (440 SE2d 195) (1994) (identifying counties as departments or agencies of the state).

3. Having determined that sovereign immunity extends to counties under the 1991 amendment, we must consider whether and to what extent the legislature has provided for the waiver of a county's sovereign immunity. Millard contends that under subsection (a) of the 1991 amendment, the Georgia Tort Claims Act is the sole means by which the legislature is authorized to waive immunity. Accordingly, he argues that he is immune from suit because the Tort Claims Act specifically excludes counties from the list of entities to which the waiver applies.

It is a basic rule of construction that a statute or constitutional provision should be construed "to make all its parts harmonize and to

give a sensible and intelligent effect to each part[, as i]t is not presumed that the legislature intended that any part would be without meaning." *Houston v. Lowes of Savannah,* 235 Ga. 201, 203 (219 SE2d 115) (1975). Subsection (a) of the 1991 amendment authorizes the legislature to "waive the state's sovereign immunity from suit by enacting a State Tort Claims Act" which may provide for the "making, handling, and disposition of actions or claims against the state and its departments, agencies, officers, and employees." Nothing in subsection (a) evidences an intent to restrict to a state tort claims act the legislature's authority to waive immunity.

Rather, subsection (e) of the 1991 amendment confers upon the legislature the authority to waive sovereign immunity "by an Act . . . which specifically provides that sovereign immunity is thereby waived and the extent of such waiver." Subsection (e) directly addresses the issue of the legislature's authority to waive immunity and authorizes the waiver of the sovereign immunity of the state and its departments and agencies by any act of the legislature that meets the stated criteria. As stated by then Chief Justice Clarke in *Curtis v. Bd. of Regents,* 262 Ga. 226, 227-228 (416 SE2d 510) (1992):

> The 1991 constitutional amendment, when viewed in light of the Georgia Tort Claims Act that was passed under its authority, does not evidence any intent by the Legislature to withdraw the waiver of sovereign immunity. Rather, the apparent intent of the amendment and the Tort Claims Act enacted under its authority is to redraw and redefine the terms of the state's waiver of sovereign immunity. The constitutional amendment is a change in the terms of the waiver of sovereign immunity, not a withdrawal of the existing waiver.

Considering the 1991 amendment as a whole, we hold that sovereign immunity is waived by any legislative act which specifically provides that sovereign immunity is waived and the extent of such waiver. This construction of the 1991 amendment is consistent with Art. IX, Sec. II, Par. IX of the 1983 State Constitution which provides that "the General Assembly may waive the immunity of counties, municipalities, and school districts by law." The enactment of a state tort claims act was but one of the ways the legislature could constitutionally waive sovereign immunity.

4. OCGA § 33-24-51[5] provides that a county waives its govern-

---

[5] Section 33-24-51 (b) provides:

Whenever a . . . county . . . shall purchase the insurance authorized by subsection (a) of this Code section to provide liability coverage for the negligence of any duly authorized officer, agent, servant, attorney, or employee in the performance of his offi-

mental immunity to the extent of the amount of liability insurance purchased for the negligence of its officers, agents, servants, attorneys, or employees arising from the use of a motor vehicle.[6] Relying on § 33-24-51 (b), the Gilberts contend that sovereign immunity has been waived to the extent of available liability insurance. Fulton County, Georgia, as amicus curiae, contends that § 33-24-51 (b) is unconstitutional because its waiver of "governmental immunity" conflicts with the 1991 amendment by waiving not only sovereign immunity but also official immunity.

The term "governmental immunity" has traditionally referred to the protection against suit provided to all levels of government. At the state government level, this immunity is often referred to as sovereign immunity because of its association with the historical principle that "the king can do no wrong."[7] Restatement (Second) of Torts, § 895 special note on governmental immunity (1979); Prosser & Keeton on Torts, Ch. 25, § 131, Governmental Immunity (5th ed. 1984). The courts of this state have used the terms "governmental immunity" and "sovereign immunity" interchangeably in referring to the immunity provided governmental entities. See *Hiers v. City of Barwick*, 262 Ga. 129, 131 (414 SE2d 647) (1992); *Thigpen v. McDuffie County Bd. of Ed.*, 255 Ga. 59 (335 SE2d 112) (1985); *Robinson v. City of Decatur*, 253 Ga. 779 (325 SE2d 752) (1985); *Hennessy v. Webb*, 245 Ga. 329 (264 SE2d 878) (1980); *Knowles v. Housing Auth. of Columbus*, 212 Ga. 729 (95 SE2d 659) (1956); *Roberts v. Barwick*, 187 Ga. 691 (1 SE2d 713) (1939); *Schmidt v. Adams*, 211 Ga. App. 156 (438 SE2d 659) (1993); *Culberson v. Fulton-DeKalb Hosp. Auth.*, 201 Ga. App. 347 (411 SE2d 75) (1991); *DeKalb County School Dist. v. Bowden*, 177 Ga. App. 296 (339 SE2d 356) (1985).

---

cial duties, its governmental immunity shall be waived to the extent of the amount of insurance so purchased. Neither the . . . county . . . nor the insuring company shall plead governmental immunity as a defense; and the . . . county . . . or the insuring company may make only those defenses which could be made if the insured were a private person.

[6] Although § 33-24-51 was enacted prior to the 1991 amendment, nothing in the 1991 amendment limits the legislature's authority to waive immunity to acts effective after its ratification or invalidates by implication any pre-existing act that waives sovereign immunity. Repeals by implication are not favored and result only where the two acts cannot stand together under any reasonable construction. *Eley v. Greene County Bd. of Commrs.*, 258 Ga. 562 (372 SE2d 231) (1988). Section 33-24-51 is consistent in both its terms and effect with this court's construction of the 1991 amendment.

[7] Historically, governmental or sovereign immunity was justified as a recognition that it was a contradiction of the sovereignty of the king to allow him to be sued as of right in his own courts. Later, the doctrine reflected the more substantive principle associated with the divine right of kings that "the king can do no wrong." See Restatement (Second) of Torts § 895 special note on governmental immunity (1979). This court recently recognized that one modern purpose of the doctrine is to "preserve the protection of the public purse." *Thomas*, 264 Ga. at 43; *Martin v. Ga. Dept. of Public Safety*, 257 Ga. 300, 301 (357 SE2d 569) (1987), cert. denied, 484 U. S. 998 (1988).

In contrast, official or qualified immunity offers limited protection from suit to governmental officers and employees. See *Cooper v. Swofford*, 258 Ga. 143 (368 SE2d 518) (1988); *Martin v. Ga. Dept. of Public Safety*, 257 Ga. 300 (357 SE2d 569) (1987), cert. denied, 484 U. S. 998 (1988); Restatement (Second) of Torts, § 895D; see also *Donaldson v. Dept. of Transp.*, 262 Ga. at 56 ("While suits against public employees in their personal capacities involve official immunity, suits against public employees in their official capacities are in reality suits against the state and, therefore, involve sovereign immunity.") (Hunt, J., concurring); *Schmidt*, 211 Ga. App. at 156-157; (contrasting governmental and official immunity); *Strickland v. Wilson*, 205 Ga. App. 91, 93-94 (421 SE2d 94) (1992) (comparing types of immunity). Although the immunity of public employees may have emanated from concerns similar to those underlying the doctrine of sovereign immunity,

> [t]he basis of the immunity has been not so much a desire to protect an erring officer as it has been a recognition of the need of preserving independence of action without deterrence or intimidation by the fear of personal liability and vexatious suits. This, together with the manifest unfairness of placing any person in a position in which he is required to exercise his judgment and at the same time is held responsible according to the judgment of others, who may have no experience in the area and may be much less qualified than he to pass judgment in a discerning fashion or who may now be acting largely on the basis of hindsight, has led to a general rule that tort liability should not be imposed for conduct of a type for which the imposition of liability would substantially impair the effective performance of a discretionary function.

Restatement (Second) of Torts, § 895D, comment b. Accordingly, we find the term "governmental immunity" is synonymous with sovereign immunity and not an umbrella term encompassing both sovereign and official immunity. The contrary language in *Guthrie v. Irons*, 211 Ga. App. 502, 503 (439 SE2d 732) (1993), is disapproved.

This definition of "governmental immunity" is consistent with previous decisions of both this court and the Court of Appeals considering the waiver of immunity provided in § 33-24-51 (b) and its predecessor with respect to an asserted defense of sovereign immunity. See *Revels v. Tift County*, 235 Ga. 333, 334 (219 SE2d 445) (1975); *Ekarika v. City of East Point*, 204 Ga. App. 731, 732-733 (420 SE2d 391) (1992); *Hicks v. Walker County School Dist.*, 172 Ga. App. 428 (323 SE2d 231) (1984). Section 33-24-51 (b) waives only the sovereign

or governmental immunity of the local governmental agency to the extent of liability insurance coverage. Accordingly, § 33-24-51 (b) provides both a waiver of sovereign immunity and the extent of such waiver and is, therefore, a legislative act waiving sovereign immunity as contemplated by the 1991 amendment. See Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e).

5. The question then becomes whether Walker County's purchase of a GIRMA coverage agreement as authorized by OCGA §§ 36-85-1 to 36-85-20 constitutes the purchase of liability insurance.[8]

Faced with the identical issue in *Hiers v. City of Barwick*, this court held that a municipality's purchase of a GIRMA liability policy constituted the purchase of liability insurance and waived sovereign immunity to the extent of available coverage. We reached this conclusion after declaring § 36-85-20 unconstitutionally void because it conflicted with the 1983 Constitution's waiver of sovereign immunity to the extent of available liability insurance.[9] 262 Ga. at 132. The conflicting language of the 1983 Constitution now having been eliminated, Millard contends that this court is constrained by § 36-85-20 to hold that the purchase of a GIRMA coverage agreement does not waive sovereign immunity.

Although the 1991 amendment eliminated the constitutional language with which § 36-85-20 was deemed inconsistent, this revision did not resurrect the void statute. A statute declared unconstitutional is deemed void from its inception and is not revived merely because the constitutional infirmity is subsequently eliminated. *Norton v. Shelby County*, 118 U. S. 425 (6 SC 1121, 30 LE 178) (1886); *James v. City of Blakely*, 143 Ga. 117 (84 SE 431) (1915). Accordingly, § 36-85-20 provides no basis for a finding that Walker County's participation in GIRMA is not a waiver of sovereign immunity and our decision in *Hiers* controls.

Regardless of the label placed on a liability policy by a governmental entity, this court has repeatedly held that liability insurance protection purchased or created by a governmental entity to insure against its own liability waives that entity's sovereign immunity. See *Litterilla v. Hosp. Auth. of Fulton County*, 262 Ga. 34 (413 SE2d 718) (1992); *Price v. Dept. of Transp.*, 257 Ga. 535 (361 SE2d 146) (1987); *Martin*, 257 Ga. at 303. Walker County's purchase of a liability coverage agreement covering the negligent acts of its employees

---

[8] Through its participation in GIRMA, Walker County is authorized to pool its resources and liabilities with other member counties and jointly purchase general liability, motor vehicle liability, or property damage insurance. OCGA § 36-85-2 (a).

[9] Section 36-85-20 provided that participation in the plan by a county "shall not constitute the obtaining of liability insurance and no sovereign immunity shall be waived on account of such participation."

constitutes the purchase of insurance as contemplated by § 33-24-51 (b). Therefore, the county has waived its sovereign immunity to the extent of its liability coverage.

6. With regard to Richardson's defense of official immunity, the trial court relied on *Logue v. Wright*, 260 Ga. 206 (392 SE2d 235) (1990), and concluded that her allegedly negligent acts were discretionary acts performed in her official capacity. The court held, therefore, that the Gilberts' claims against Richardson were barred by the doctrine of official immunity as a matter of law.

Historically, under the English common law, although the government was cloaked with sovereign or governmental immunity, public officials and employees were personally liable for torts they committed in the performance of their duties. However, over the years in this country the trend has been in the opposite direction. As a result, there has developed what has become known as qualified immunity or official immunity for public officials and employees. The doctrine of official immunity, developed primarily in Georgia through case law, provides that while a public officer or employee may be personally liable for his negligent ministerial acts, he may not be held liable for his discretionary acts unless such acts are wilful, wanton, or outside the scope of his authority. See *Hennessy v. Webb*, 245 Ga. at 331; OCGA § 36-33-4; Sentell, Individual Liability in Georgia Local Government Law: The Haunting Hiatus of Hennessy, 40 Mercer L. Rev. 27 (1988).

With passage of the 1991 amendment, the immunity enjoyed by public officers and employees was made part of the State Constitution. See Ga. Const. of 1983, Art. I, Sec. II, Par. IX (d). Subsection (d) of the 1991 amendment states:

> Except as specifically provided by the General Assembly in a State Tort Claims Act, all officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions. Except as provided in this subparagraph, officers and employees of the state or its departments and agencies shall not be subject to suit or liability, and no judgment shall be entered against them, for the performance or nonperformance of their official functions. The provisions of this subparagraph shall not be waived.

According to the plain language of subsection (d), state officers and

employees and those of its departments and agencies are subject to suit only when they negligently perform or fail to perform their "ministerial functions" or when they act with actual malice or intent to cause injury in the performance of their "official functions." This court has not previously considered the effect of the amendment's reference to "ministerial" or "official" functions, in contrast to the previous "ministerial act" versus "discretionary act" dichotomy.

We interpret the term "official functions" to mean any act performed within the officer's or employee's scope of authority, including both ministerial and discretionary acts. Under this definition, the 1991 amendment provides no immunity for ministerial acts negligently performed or for ministerial or discretionary acts performed with malice or an intent to injure. It, however, does provide immunity for the negligent performance of discretionary acts, which is consistent with prior law. This interpretation comports with the purpose of providing immunity from personal liability to government employees who work in positions where they make policy or exercise discretion.

Richardson was acting within the scope of her authority as a law enforcement officer when she rushed to back-up another officer in response to an emergency call. We have previously held that a deputy sheriff is exercising discretion when he decides to rush to the scene of a fight. See *Logue*, 260 Ga. at 208. Thus, Richardson was performing an official discretionary function when the accident occurred and is immune from personal liability under the 1991 amendment. Accordingly, the Court of Appeals properly affirmed the trial court's grant of summary judgment to Richardson under the doctrine of official immunity.

7. The Gilberts base their claim against Sheriff Millard solely on the doctrine of respondeat superior. In previous cases where this court found the government liable for the negligence of its employees under the principle of respondeat superior, the state's self-insurance fund had waived both official immunity and sovereign immunity. See *Donaldson v. Dept. of Transp.*, 262 Ga. at 56 (Hunt, J., concurring).[10] In contrast, subsection (d) of the 1991 amendment expressly prohibits the waiver of official immunity, thus protecting public employees from personal liability.

Under the doctrine of respondeat superior, a principal has no defense based on an agent's immunity from civil liability for an act com-

---

[10] Other cases involving the doctrine of respondeat superior have not dealt with the official immunity of employees. See *Ga. Dept. of Human Resources v. Poss*, 263 Ga. 347, 348-349 (434 SE2d 488) (1993) (holding state could not be liable for the negligent acts of its employees when the employees were not personally liable due to the running of statute of limitation); cf. *Nelson*, 249 Ga. at 337 (declining to reach issue whether respondeat superior applied to impute negligence to warden for ministerial acts of his department's employees since plaintiffs alleged that the warden negligently performed his ministerial duties).

mitted in the course of employment. Restatement (Second) of Agency, § 217 (b) (ii) (1958).

> Immunities, unlike privileges, are not delegable and are available as a defense only to persons who have them. . . . [Where] the agent acts in the scope of employment, the fact that the agent has an immunity from liability does not bar a civil action against the principal.

Id. comment b. Thus, the Court of Appeals has held that private employers could be liable for the negligent acts of their employees, despite the employees' immunity from liability. See *Garnto v. Henson*, 88 Ga. App. 320, 323 (76 SE2d 636) (1953) (permitting wife to sue husband's employer on the theory of respondeat superior for injuries inflicted by the husband within the scope of his employment); *Stapleton v. Stapleton*, 85 Ga. App. 728, 729 (70 SE2d 156) (1952) (permitting a child to sue her mother's employer for injuries suffered from the mother's negligence in operating a car within the scope of her employment, even though the mother was immune from suit).

Following this rule, we hold that the official immunity of a public employee does not protect a governmental entity from liability under the doctrine of respondeat superior. A county may be liable for a county employee's negligence in performing an official function to the extent the county has waived sovereign immunity. See *James v. Prince George's County*, 288 Md. 315 (418 A2d 1173, 1182-1184) (1980); *Taplin v. Town of Chatham*, 390 Mass. 1 (453 NE2d 421, 423) (1983); *Adams v. Peoples*, 18 Ohio St. 3d 140 (480 NE2d 428, 430) (1985); *Muntan v. City of Monongahela*, 45 Pa. Commw. 23 (406 A2d 811, 813-814) (1979); *Maynard v. City of Madison*, 101 Wis. 2d 273 (304 NW2d 163, 169) (1981). The rationale is that the government should be liable for the "inevitable mishaps which will occur when its employees perform their functions without fear of liability," particularly when government has waived its immunity as a sovereign. See *James*, 418 A2d at 1184 (quoting *Downs v. United States*, 382 FSupp. 713, 749-750 (M.D. Tenn. 1974), overruled on other grounds, 522 F2d 990 (6th Cir. 1975)). Since deputy sheriffs are employed by the sheriff rather than the county, sheriffs may be liable in their official capacity for a deputy's negligence in performing an official function.

In conclusion, Sheriff Millard may not claim the benefit of Richardson's official immunity defense. Because he is being sued in his official capacity, he is entitled to the benefit of Walker County's sovereign immunity defense. Since, however, the county has waived sovereign immunity to the extent of its liability insurance coverage, Millard's sovereign immunity defense is likewise waived to that extent.

*Judgment affirmed in part and reversed in part. All the Justices*

*concur, except Hunt, C. J., who concurs in the judgment only.*

DECIDED NOVEMBER 21, 1994 —
RECONSIDERATION DENIED DECEMBER 20, 1994.

*Hill & Henry, William R. Hill, Jr., Pursley, Howell, Lowery & Meeks, Charles N. Pursley, Jr., Summers, McCrea & Wyatt, Jerry H. Summers,* for appellants.
*Barnhart, O'Quinn & Williams, Michael A. O'Quinn, Leitner, Warner & Moffitt, George W. Carpenter, Stuart F. James, Strang, Fletcher, Carriger, Walker, Hodge & Smith, Larry L. Cash,* for appellees.
*Samuel W. Oates, Jr., Franklin, Taulbee, Rushing & Bunce, Elizabeth F. Bunce, Bauer, Deitch & Kline, Craig T. Jones, James F. Grubiak, Oliver R. Hunter,* amici curiae.