A94A1448. MILLER et al. v. GEORGIA PORTS AUTHORITY.
(460 SE2d 100)

BEASLEY, Chief Judge.

Stewart and Denise Miller brought this personal injury and loss of consortium action against Georgia Ports Authority (Authority) after Stewart Miller was injured while working as a longshoreman at the Authority's Garden City Terminal on November 7, 1991. The trial court granted the Authority's motion to dismiss due to plaintiffs' failure to comply with the provisions of the Georgia Tort Claims Act, see OCGA § 50-21-26 (a), and plaintiffs filed the present appeal.

1. The Millers assert that the procedures required by the Act do not apply to the Authority. The Act applies to "the State of Georgia and any of its offices, agencies, authorities, departments, commissions, boards, divisions, instrumentalities, and institutions, but does not include counties, municipalities, school districts, other units of local government, hospital authorities, or housing and other local authorities." OCGA § 50-21-22 (5). When this was enacted in 1992, the Authority was already in existence, having been created in 1945. Ga. L. 1945, p. 464 et seq. By its very name, it was an "authority" of the State. Not only that, the legislature specifically described this creature as "a body corporate and politic, . . . which shall be deemed to be an instrumentality of the State of Georgia and a public corporation. . . ." OCGA § 52-2-4.

When the Georgia Supreme Court considered the status of the Authority in 1962 to determine whether it was covered by the National Labor Relations Act, it concluded that it "is a creature of the State, and in the operation of the docks, wharves, etc., it does so as the instrumentality of the State for governmental purposes as authorized by the Constitution." *Intl. &c. Assn. v. Ga. &c. Auth.*, 217 Ga. 712, 716 (1) (a) (124 SE2d 733) (1962). As a result, the Court held, it came within the exception in the NLRA for "any State or political

subdivision thereof." Id. at 714, 716.

The General Assembly was bound to know of the Authority's existence as such when it adopted the Tort Claims Act, included the State's "instrumentalities," and did not expressly exclude the Georgia Ports Authority along with the other express exclusions. If this authority, this instrumentality, is not covered, then what authority or instrumentality *is* intended by the General Assembly to be embraced?

*McLucas v. State Bridge Bldg. Auth.*, 210 Ga. 1, 6 (77 SE2d 531) (1953), does not remove the Georgia Ports Authority from the Act, because it would remove all instrumentalities; yet the Act expressly applies to "instrumentalities." *McLucas* was not written with the Georgia Tort Claims Act in mind, since it was decided almost 40 years before the Act was passed. Nor was it written about the Georgia Ports Authority but about the State Bridge Building Authority, created separately. The question was whether its revenue bonds were obligations of the State, not whether it could be sued in tort.

Similarly, *Thomas v. Hosp. Auth. of Clarke County &c.*, 264 Ga. 40, 41 (1) (440 SE2d 195) (1994), does not apply; hospital authorities are expressly excluded from subjection to the Georgia Tort Claims Act. OCGA § 50-21-22 (5). If they were not immune from suit in the first place, it would be unnecessary to exclude them from the group which is subject to the Tort Claims Act. Yet in *Thomas*, which was decided after the adoption of the Tort Claims Act, the Supreme Court held that "a hospital authority, though an instrumentality of government, is not, in any sense, an agency or department of the state. . . ." Id. at 42. "[H]ospital authorities, because they are neither the state nor a department or agency of the state, are not entitled to the defense of sovereign immunity." Id. at 41. Thus they may be sued, just as any other entity.

Although the question of whether the Authority is constitutionally entitled to immunity has not been directly addressed, in *Marine Port Terminals v. Ga. Ports Auth.*, 180 Ga. App. 380, 381 (348 SE2d 896) (1986), this court accepted without discussion that OCGA § 52-2-4's "sue and be sued" language constituted "a waiver of governmental immunity by which the Ports Authority consents to the filing of a suit *in the proper forum. Hodges v. Tomberlin*, 510 FSupp. 1280, 1283." However, "sue and be sued" language has since been declared insufficient to waive immunity, and all cases stating the contrary have been overruled. *Self v. City of Atlanta*, 259 Ga. 78, 79-80 (377 SE2d 674) (1989). Other than the "sue and be sued" language, there is nothing in OCGA § 52-2-1 et seq. that could be construed as "an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver." Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e) (1991 Amend.). Thus, it appears that before 1991, GPA had a mantle of sovereign immunity.

The Georgia Supreme Court has stated: "The language used in the 1991 amendment is virtually identical to that used in the 1983 amendment to describe the entities to which sovereign immunity applies. With full knowledge of the construction placed upon the similar language of the 1983 amendment, [cit.], the legislature proposed and the voters of this state ratified the 1991 amendment. Absent any evidence that the legislature intended a different interpretation or to indicate that the electorate did not intend to extend sovereign immunity to counties, we hold the 1991 amendment's extension of sovereign immunity to 'the state and its departments and agencies' must also apply to counties. [Cits.]" *Gilbert v. Richardson*, 264 Ga. 744, 747 (2) (452 SE2d 476) (1994). By the same token, absent evidence to the contrary, the 1991 amendment intended no change in the Authority's status as to sovereign immunity, it was covered, and the Act applies. This analysis has been used before. See *Coffee County School Dist. v. Snipes*, 216 Ga. App. 293, 294-295 (454 SE2d 149) (1995).

Moreover, it is not clear that the General Assembly, in describing those entities which are subject to the Georgia Tort Claims Act, meant only to include those which could otherwise assert the defense of sovereign immunity. The legislature did not state that, in its definition, but rather listed a number of governmental entities whose employees' tortious acts could be redressed at the expense of the state treasury. It is, of course, limited, see for example OCGA § 50-21-24, as the legislature wished to keep confined "[t]he exposure of the state treasury to tort liability." At the same time, it was desirous of being fair and equitable to injured people. OCGA § 50-21-21.

As sovereign immunity applies to the Authority, the trial court was correct in determining the Act applies.

2. The Millers also contend the Act's notice requirements set forth in OCGA § 50-21-26 cannot be applied to their suit retroactively because to do so would be unconstitutional. OCGA § 50-21-27 specifically provides that the Act is to be applied retroactively, and OCGA § 50-21-26 (a) (1) provides detail on how notice is to be given in suits when the cause of action accrued between January 1, 1991 and July 1, 1992, as it did in this case. The Supreme Court has exclusive jurisdiction over appeals challenging the constitutionality of a statute. Ga. Const. of 1983, Art. VI, Sec. VI, Par. II (1). This appeal was transferred from this court to the Supreme Court. The question was briefed. The Supreme Court then transferred it back to this court without explanation. Such a transfer " ' "is a final determination that no constitutional question was in fact properly raised or, if so raised, that it was not meritorious." [Cit.]' [Cits.]" *Ryals v. State*, 215 Ga. App. 51, 52 (1) (449 SE2d 865) (1994).

*Judgment affirmed. Birdsong, P. J., Andrews, Johnson and Ruf-*

*fin, JJ., concur. McMurray, P. J., Pope, P. J., and Blackburn, J., dissent. Smith, J., not participating.*

POPE, Presiding Judge, dissenting.

I respectfully dissent. The Georgia Tort Claims Act (GTCA) was enacted as a means to waive the sovereign immunity extended to the "state and all of its departments and agencies" in Art. I, Sec. II, Par. IX (e) of the 1983 Georgia Constitution, as amended effective January 1, 1991. Id. at (a); *Gilbert v. Richardson*, 264 Ga. 744, 746 (2) (452 SE2d 476) (1994); see also *Intl. Business Machines Corp. v. Evans*, 265 Ga. 215, 217 (2) (453 SE2d 706) (1995). The first question to be answered then is whether the Authority is entitled to assert the defense of sovereign immunity as a department or agency of the State as those terms are used in the 1991 amendment; if it is not, then the GTCA is inapplicable. By focusing on the applicability of the GTCA without first resolving this issue, the majority and the Authority put the cart before the horse.

The question of whether the Georgia Ports Authority is a "department or agency" of the State under the 1991 amendment is one of first impression. Although the majority relies on cases which suggest that the Authority enjoyed immunity under prior law, the majority acknowledges that "the question of whether the Authority is constitutionally entitled to immunity has not been directly addressed." I would also point out that even if the Authority enjoyed immunity before the 1991 amendment, "[t]he Supreme Court has construed differently the same phrase contained in the pre-1991 amendment versus the post-1991 amendment for the apparent purpose of changing the impact of the GTCA." *Gilbert v. Richardson*, 217 Ga. App. 612 (458 SE2d 405) (1995) (physical precedent only).

Moreover, relying on past precedent leads to the conclusion that the Authority is *not* a department or agency of the State. Our Supreme Court has looked at entities with similar statutory attributes and concluded that "[w]hile [an] Authority is an instrumentality of the State, it is nevertheless not the State, nor a part of the State, nor an agency of the State. It is a mere creature of the State, having distinct corporate entity." *McLucas v. State Bridge Bldg. Auth.*, 210 Ga. 1, 6 (77 SE2d 531) (1953). In *Thomas v. Hosp. Auth. of Clarke County &c.*, 264 Ga. 40, 41 (1) (440 SE2d 195) (1994), the court noted that in earlier cases it had "applied a narrow definition in determining what constitutes the state or a political division thereof, distinguishing the state and its political subdivisions from instrumentalities created by the state to carry out various functions." Id. at 41 (1). See also id. at 41, n. 1. And it makes no difference in this analysis that the statute creating the authority provides that it will be performing "es-

sential governmental functions,"[1] "[s]ince a hospital authority, though an instrumentality of government, is not, in any sense, an agency or department of the state, the nature of its function is irrelevant; it is not, by the language of the statute entitled to the protection of sovereign immunity." Id. at 42. Applying the same considerations here, I would conclude that the Ports Authority is not entitled to the protection of sovereign immunity extended to the state, its departments and agencies, and that the trial court thus erred in dismissing plaintiffs' complaint for failure to comply with the GTCA.

I find it unnecessary to address plaintiffs' remaining enumeration of error, because I do not believe the GTCA applies to plaintiffs' claims.

I am authorized to state that Presiding Judge McMurray and Judge Blackburn join in this dissent.

DECIDED JULY 14, 1995 —

*Adams & Ellis, George L. Lewis, Lester B. Johnson III*, for appellants.

*Michael J. Bowers, Attorney General, John B. Ballard, Jr., Roland F. Matson, Senior Assistant Attorneys General, Ranitz, Mahoney, Coolidge & Mahoney, Thomas J. Mahoney III, R. Stephen Flagler*, for appellee.

---

[1] As to hospital authorities, see OCGA § 31-7-75 and as to the Ports Authority, see OCGA § 52-2-37.