A04A0152, A04A0153. MEAGHER et al. v. QUICK; and vice versa.
(594 SE2d 182)

ELDRIDGE, Judge.

Hattie Sanders as administratrix of the estate of Jamorio Montez Marshall ("child" or "decedent"), a ten-year-old child, originally filed the instant wrongful death action in the Superior Court of Clarke County, against the appellants/cross-appellees/defendants Unified Government of Athens-Clarke County (the "Unified Government"), Unified Government Police Chief Jack Lumpkin, and Unified Government police officers Sergeant Melanie Rutledge, David Meagher, and Harry Duranzo. The matter was thereafter removed to the United States District Court for the Middle District of Georgia as a civil rights action under 42 USC § 1983. Finding no violation of the

decedent's constitutional rights, the district court granted summary judgment to the defendants and remanded the remaining state law claims to the superior court. There, the superior court dismissed the plaintiff's claims against the defendants, less Officers Duranzo and Meagher. Appellee/cross-appellant/plaintiff Regina Quick, substituted as the administratrix of the decedent's estate upon Sanders' resignation as administratrix thereof, then filed an amended complaint against Duranzo and Meagher, averring actual malice and negligence in the discharge of their ministerial duties under the Family Violence Act, OCGA § 17-4-20.1 (c), particularly in failing to complete a Family Violence Report.

Upon our grant of interlocutory appeal, in Case No. A04A0152 the Unified Government challenges the superior court's partial denial of its motion for summary judgment grounded upon the official immunity doctrine, Officers Duranzo and Meagher as immune from liability because the negligent acts alleged were discretionary. In Case No. A04A0153, Quick cross-appeals from the superior court's grant of partial summary judgment for the Unified Government upon finding no jury question as to actual malice in Officers Duranzo and Meagher upon giving preclusive effect to the district court's findings (a) that they had not misled their supervising officer, Sergeant Rutledge, and Unified Government police department dispatcher, Leigh Martin Ives, as to the scope of the investigation they conducted, and (b) that such investigation was not violative of the Fourteenth Amendment as a substantive due process violation. By a further claim of error, Quick challenges partial summary judgment for the Unified Government, contending that the superior court erred in finding that no jury question remained on the issue of the investigation in issue as showing actual malice in Duranzo and Meagher. Finding the duty to complete a Family Violence Report under the Act ministerial and no genuine issue of material fact as to the issue of actual malice, we affirm in the main appeal and in the cross-appeal.

The record shows that Officers Duranzo and Meagher were dispatched to 155 Kentucky Circle, Athens, Georgia, shortly after noon on February 12, 1998. They arrived separately, minutes apart, Dispatcher Ives having directed them to the residence upon a 911 call from a neighbor reporting a female child being whipped after what sounded like someone having sex. On reaching the Kentucky Circle residence, an apartment, Duranzo questioned several workmen who appeared to be leaving the area. The men indicated that they had overheard a man and a woman arguing with a child, this from a downstairs apartment where the workmen had been working. Officer Duranzo went to the door of the residence and knocked, and a woman, later identified as Vernessa Marshall, answered the door. Duranzo explained that he had been dispatched to the scene upon a

911 call. Contemporaneously, Officer Meagher arrived on the scene and joined Duranzo at the door. On Marshall's invitation, both officers entered the home.

Therein, Officer Duranzo found the apartment neat and orderly; Marshall was not sweating and composed; left no impression that she was hiding anything; explained that she did not have a female child; explained that her son had been suspended from school for stealing; and showed the officers a document confirming the suspension. While Officer Duranzo and Marshall were talking, a man, subsequently identified as Demetrius Paul, entered the room from a rear bedroom where he and Marshall had been whipping the child and said, "You know, we're having an argument, but we're through talking now[,]" a remark which Officer Duranzo interpreted to mean that the child was to get a spanking. Duranzo cautioned Marshall and Paul that while they could spank the child, they could not do so to the point of leaving bruises.

In the totality of the circumstances, Officers Duranzo and Meagher concluded that no child abuse or other criminal activity had been committed and left the residence. Neither officer had seen the child; neither asked to see the child; and neither made any attempt to determine the legal relationship between the child and the adults apparently living in the residence, Marshall and Paul. The officers admitted that such actions would have been required in order to complete a Family Violence Report under OCGA § 17-4-20.1 (c). Later, it was determined that Marshall's parental rights in the child had been terminated approximately two years before the child's death and that Paul was Marshall's boyfriend and unrelated to the child.

Sergeant Rutledge arrived at the Kentucky Circle residence as Duranzo and Meagher were preparing to depart. The officers reported to Sergeant Rutledge, informing her that the allegation of child abuse was unfounded. All then departed the scene. Decedent's beating then resumed and continued without interruption until shortly before 3:30 p.m.

At approximately 4:25 p.m., the child's maternal grandmother, initial administratrix Sanders, brought the child to St. Mary's Hospital in Athens. The child was pronounced dead 20 minutes later, the death certificate describing the cause of death as multiple blunt force, soft tissue injuries inflicted by the belt of another. *Held*:

### Case No. A04A0152

1. "[P]ublic officials are immune from damages that result from their performance of discretionary functions, unless those functions were undertaken with malice or intent to cause injury. *Schmidt v. Adams*, 211 Ga. App. 156 (438 SE2d 659) (1993)." *Phillips v. Walls*,

242 Ga. App. 309, 311 (1) (529 SE2d 626) (2000); see Art. I, Sec. II, Par. IX (d), Ga. Const. (1983). Therefore, where a task is ministerial, official immunity does not apply. Id. Generally, a ministerial act is one that "is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty." *Stone v. Taylor*, 233 Ga. App. 886, 888 (2) (506 SE2d 161) (1998). For example, upon the payment of proper fees, the clerk by file stamp enters a complaint of record as "Filed" at a date and time certain. However, a discretionary task is one which " 'calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.' " Id. In determining whether there exists a reasonable, articulable suspicion warranting a stop, police officers exercise a discretionary police function.

In light of the foregoing, analysis of a public official's acts as ministerial or discretionary is dependent upon the facts of the individual case, particularly such fact or facts as specifically relevant to the official act or omission from which liability arises. *Happoldt v. Kutscher*, 256 Ga. App. 96, 99 (1) (567 SE2d 380) (2002). Where a situation involves multiple official acts, some may be discretionary; others may be ministerial. See id.; compare *Brock v. Sumter County School Bd.*, 246 Ga. App. 815, 821 (2) (542 SE2d 547) (2000) (supervision of students and subtasks attendant thereto "discretionary" without regard to such subtasks as mixed ministerial and discretionary).

OCGA § 17-4-20.1 (c) provides that *"[w]henever* a law enforcement officer investigates an incident of family violence, whether or not an arrest is made, the officer *shall* prepare and submit . . . a written report of the incident entitled 'Family Violence Report.' " (Emphasis supplied.) Id. The statute also specifies that the report include the following:

(1) Name of the parties;
(2) Relationship of the parties;
(3) Sex of the parties;
(4) Date of birth of the parties;
(5) Time, place, and date of the incident;
(6) Whether children were involved or whether the act of family violence was committed in the presence of children;
(7) Type and extent of the alleged abuse;
(8) Existence of substance abuse;
(9) Number and types of weapons involved;
(10) Existence of any prior court orders;
(11) Type of police action taken in disposition of case, the reasons for the officer's determination that one party was

the primary physical aggressor, and mitigating circumstances for why an arrest was not made;

(12) Whether the victim was apprised of available remedies and services; and

(13) Any other information that may be pertinent.

OCGA § 17-4-20.1 (c). While it excepts "reasonable discipline administered by a parent to a child in the form of corporal punishment, restraint, or detention[,]" OCGA § 19-13-1 defines "family violence" broadly. Included therein is the commission of any felony, battery, assault, criminal damage to property, unlawful restraint, or criminal trespass occurring between spouses, parents of the same child, parents and children, stepparents and stepchildren, foster parents and foster children, and other persons living or formerly living in the same household. Id.

The Unified Government does not challenge the Family Violence Report as mandatory under OCGA § 17-4-20.1 (c). Because such Code section provides that a Family Violence Report "shall" be prepared and submitted "whenever" an incident of family violence is investigated, it cannot be construed otherwise. "In its ordinary signification 'shall' is a word of command, and the context ought to be very strongly persuasive before that word is softened into a mere permission." (Citations and punctuation omitted.) *Rickett v. State*, 276 Ga. 609, 610 (2) (581 SE2d 32) (2003). "Whenever" as likewise a word of command meaning "[e]very time that[,]" American Heritage Dictionary, p. 775 (Dell 2nd college ed. 1983), should also be construed for its plain meaning. "Where a . . . statute is plain and susceptible of but one natural and reasonable construction, the court has no authority to place a different construction upon it, but must construe it according to its terms." (Citations and punctuation omitted.) *Jeannette v. Southwire Co.*, 249 Ga. App. 406, 409 (548 SE2d 660) (2001). Instead, the Unified Government argues that the official immunity defense lies as to Officers Duranzo and Meagher, in that the Family Violence Act, OCGA § 17-4-20.1, is not applicable in circumstances involving reasonably imposed parental discipline. In this regard, citing OCGA § 17-4-20.1 (a), the Unified Government asserts that the Family Violence Act is not triggered requiring the police to investigate for family violence and render a Family Violence Report absent a determination that an act of family violence has been committed under OCGA § 19-13-1, this a police determination which is discretionary in nature. However, OCGA § 17-4-20.1 (c) is explicit: whenever an incident of possible family violence is investigated by police, a written Family Violence Report is mandatory, whether founded or unfounded, such report as inclusive of 13 subparts, a requirement which, in effect, sets out the scope of the minimum essential investi-

gation for family violence required by the General Assembly. Id. These acts as simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty, are ministerial, that is, if the condition "A," then the required response "B." To construe the Act as applicable upon a discretionary police determination of conduct constituting family violence would be to defeat the purpose of the legislation. This we are not authorized to do. *Bd. of Trustees &c. of Atlanta v. Christy*, 246 Ga. 553, 554 (1) (272 SE2d 288) (1980).

It is undisputed that Officers Duranzo and Meagher here were dispatched in response to a report of child abuse, on its face an incident of possible family violence. As a consequence, the completion of a Family Violence Report was required upon an investigation broad enough to permit the same. OCGA § 17-4-20.1 (c). Officers Duranzo and Meagher admit their failure to follow the statutorily mandated procedure for the completion of a Family Violence Report. That no such report was completed is likewise undisputed. Inasmuch as genuine issues of material fact remain as to whether their failure to do so proximately resulted in the child's injuries and death, no error obtained for the superior court's denial of the Unified Government's motion for summary judgment. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

### Case No. A04A0153

2. Quick contends that the superior court erred in refusing to allow her to relitigate issues which had been resolved adversely to her upon the district court's grant of summary judgment upon her substantive due process claim under the Fourteenth Amendment, i.e., whether Officers Duranzo and Meagher misrepresented their actions in the apartment in reporting the claim of child abuse as unfounded, this leading Sergeant Rutledge and Dispatcher Ives to believe that they had seen the child, foreclosing further investigation causing the child's death, and whether Officer Duranzo's explanation as to reasonably disciplining the child led Marshall and Paul to believe that they could continue the child's whipping, causing his death.

"[U]nlike res judicata,[1] collateral estoppel does not require identity of the claim — so long as the issue was determined in the previous action and there is identity of parties, that issue may not be re-

---

[1] "Three prerequisites must be satisfied before res judicata applies – (1) identity of the cause of action, (2) identity of the parties or their privies, and (3) previous adjudication on the merits by a court of competent jurisdiction." *Waldroup v. Greene County Hosp. Auth.*, 265 Ga. 864, 866 (1) (463 SE2d 5) (1995).

litigated, even as a part of a different claim." *Waldroup v. Greene County Hosp. Auth.*, 265 Ga. 864, 867 (2) (463 SE2d 5) (1995). Moreover, collateral estoppel bars not only the relitigation of issues actually litigated and decided by a prior action, it also precludes issues "that necessarily had to be decided in order for the previous judgment to have been rendered. [*Sumner v. Sumner*, 186 Ga. 390-391 (2) (197 SE 833) (1938).]" Id.

The district court found that Officers Duranzo and Meagher had not lied in reporting upon the claim of child abuse; did not know that the child was in need of rescue; and did not act to prevent other officers from coming to the child's aid. These issues having been decided adversely to Quick in the federal proceeding, they were unavailable to her in support of her actual malice claim against the Unified Government. *In re T. M. G.*, 275 Ga. 543, 544 (570 SE2d 327) (2002); *Waldroup v. Greene County Hosp. Auth.*, supra.

Further, it is clear that resolution of the foregoing issues was fundamental to the district court's judgment on the merits of Quick's Fourteenth Amendment substantive due process claim. Pertinently, the district court found no conduct in Duranzo and Meagher as meeting a shock the conscience threshold. See *County of Sacramento v. Lewis*, 523 U. S. 833 (118 SC 1708, 140 LE2d 1043) (1998). And where issues common to both federal and state actions are ruled upon in the earlier federal proceeding, as here, collateral estoppel operates to prevent relitigation of such issues in the subsequent state action. *Brewer v. Schacht*, 235 Ga. App. 313, 315 (509 SE2d 378) (1999). Accordingly, no error obtained upon the superior court's preclusion of issues litigated before the district court.

3. Neither is there merit in Quick's claim that partial summary judgment for the Unified Government on the issue of actual malice is error. "[I]n the context of official immunity, actual malice means a deliberate intention to do a wrongful act [and] [s]uch act may be accomplished with or without ill will and whether or not injury was intended." *Adams v. Hazelwood*, 271 Ga. 414, 415 (2) (520 SE2d 896) (1999).

Apart from the issues decided adversely to Quick in district court and properly barred from relitigation in the superior court, Division 2, supra, Quick offered no evidence showing the actions of Officers Duranzo and Meagher as undertaken with an intent to cause the child's death. Accordingly, the superior court did not err in granting the Unified Government partial summary judgment upon Quick's actual malice claim. *Lau's Corp. v. Haskins*, supra.

*Judgment affirmed. Ruffin, P. J., and Adams, J., concur.*

DECIDED DECEMBER 11, 2003 —

*Begnaud & Marshall, Andrew H. Marshall, Haygood & Pruett, Michael C. Pruett,* for appellants.

*Blasingame, Burch, Garrard, Bryant & Ashley, E. Davison Burch, Evert & Weathersby, Christopher G. Conley, James W. Smith,* for appellee.