**THIRD DIVISION**
**DILLARD, J.**
**MCFADDEN and PETERSON, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 9, 2016**

# In the Court of Appeals of Georgia

A15A2043. BOATRIGHT v. COPELAND et al.          PE-039

PETERSON, Judge.

Tracy Boatright appeals the dismissal of his personal injury lawsuit against the Appling County school superintendent and school board members. He argues that, because the school district violated its ministerial duty to comply with state law prohibiting weapons like the cannon that injured him, the trial court erred in finding that official immunity bars his claims. We reverse because the trial court erred when it concluded that interpreting the criminal law of this state was a discretionary act within the scope of authority of the school board and school superintendent.

We review the trial court's grant of a motion to dismiss de novo. *See TechBios v. Champagne*, 301 Ga. App. 592, 593 (688 SE2d 378) (2009). "A motion to dismiss may be granted only where a complaint shows with certainty that the plaintiff would

not be entitled to relief under any state of facts that could be proven in support of his claim." *Alcatraz Media v. Yahoo!*, 290 Ga. App. 882, 882 (660 SE2d 797) (2008) (citation omitted). For purposes of this review, we take as true all the factual allegations in the complaint. *Brantley v. Dep't of Human Res.*, 271 Ga. 679, 679 n.3 (523 SE2d 571) (1999).

So viewed, Boatright's amended complaint asserted that, during an Appling County High School football game, he was assisting in loading and firing a cannon owned by the Appling County School District. While Boatright was compressing the gunpowder in the cannon with a rod, it discharged, launching the rod into the air. The explosion permanently injured Boatright's hand. Boatright brought a personal injury suit against the school district's superintendent, Scarlett Miles Copeland, and school board members Randy Crawford, Randy Sellers, Jeffrey Miller, Scottie Ammons, and Cindy Tomberlin (collectively, "Defendants"), asserting claims for negligence per se and premises liability/negligence on the theory that Defendants were negligent in allowing the cannon to be present and used in a school safety zone and at a school function in violation of OCGA § 16-11-127.1. Defendants filed a motion to dismiss on the basis of official immunity, which the trial court granted, finding that Defendants had "discretion to interpret the law and decide that particular conduct

2

does not violate it[,]" and to decide that the cannon was permitted by the "classroom work" exception to the general prohibition on weapons on campus found in OCGA § 16-11-127.1. This appeal followed.

Boatright argues that the trial court erred by concluding that Defendants were entitled to official immunity. We agree.

> The doctrine of official immunity protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice or corruption. A discretionary act requires personal deliberation and judgment, which entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.

*Aliffi v. Liberty Cnty. School Dist.*, 259 Ga. App. 713, 715 (578 SE2d 146) (2003) (citation omitted). "The rationale for this immunity is to preserve the public employee's independence of action without fear of lawsuits and to prevent a review of his or her judgment in hindsight." *Taylor v. Campbell*, 320 Ga. App. 362, 363 (739 SE2d 801) (2013) (citation omitted). But this immunity for discretionary acts does not extend to ministerial acts. "A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty." *Aliffi*, 259 Ga. App. at 715 (citation

3

omitted). For example, "[a] ministerial duty may be established by evidence such as a written policy, an unwritten policy, a supervisor's specific directive, or a statute." *Roper v. Greenway*, 294 Ga. 112, 114-15 (751 SE2d 351) (2013) (citations omitted). A public officer or employee may be personally liable for ministerial acts negligently performed, or for ministerial acts he or she negligently failed to perform. *Taylor*, 320 Ga. App. at 363; *see also* GA. CONST. Art. I, Sec. II, Para. IX(d); *Gilbert v. Richardson*, 264 Ga. 744, 752 (6) (452 SE2d 476) (1994).

Here, Boatright does not argue that Defendants acted wilfully or with malice, but rather argues that they negligently performed their ministerial duty to comply with the prohibition on weapons in school safety zones and at school functions imposed by OCGA § 16-11-127.1. He also argues that, due to the current procedural posture of the case, we cannot definitively determine that Defendants are entitled to official immunity. We agree.

1.     The trial court erred in concluding that official immunity applied to Defendants' exercise of discretion in interpreting Georgia criminal law.

a.     In this procedural posture, we assume that Boatright may be able to prove facts showing that possession or control of the cannon at football games violates OCGA § 16-11-127.1. OCGA § 16-11-127.1 makes it "unlawful for any

4

person to carry to or to possess or have under such person's control while within a school safety zone, [or] at a school function . . . any weapon or explosive compound[.]" OCGA § 16-11-127.1(b)(1).

Cannons, of course, will usually qualify as "weapon[s]" within the definition of the statute. A "weapon" is defined as including "any pistol, revolver, or any weapon designed or intended to propel a missile of any kind . . . " OCGA § 16-11-127.1(a)(4). Cannons are generally designed to propel missiles, and this is precisely what the cannon at issue here is alleged to have done; that it allegedly fired a rod by accident, instead of a cannonball on purpose, is of no moment to a definition focused on general design. We can affirm the dismissal of Boatwright's complaint only if we conclude that he can prove no set of facts consistent with his complaint that entitle him to relief. *See S-D RIRA, LLC v. Outback Prop. Owners' Ass'n*, 330 Ga. App. 442, 448 (1) (765 SE2d 498) (2014). We lack any basis for concluding that Boatwright cannot prove a set of facts showing that the cannon at issue here was designed to fire a missile, and thus we presume for purposes of this appeal that the cannon is a weapon within the meaning of the statute. Of course, if on remand facts are developed showing otherwise, this decision does not preclude the trial court from reaching a different conclusion.

Presuming thusly that the cannon is a "weapon" under OCGA § 16-11-127.1, we next consider whether the cannon is subject to the statute's prohibition, and conclude that it is. Boatwright alleges that the cannon was present and used at a school function (a location in which the statute prohibits possession of weapons) and on school property (which, whether owned or leased by the school district, qualifies as a "school safety zone" and is, therefore, also a location in which the statute prohibits possession of weapons). *See* OCGA § 16-11-127.1(a)(2, 3). The statute contains several narrow exceptions to this general prohibition, but the only exception arguably applicable here appears in OCGA § 16-11-127.1(a)(4), which carves out from the definition of "weapon" any item "used for classroom work authorized by the teacher." But can firing a cannon on a football field as part of a football game's festivities be considered "classroom work"? Not in this case, at least.

> When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would.

6

*Deal v. Coleman*, 294 Ga. 170, 172-73 (1) (a) (751 SE2d 337) (2013) (citations and internal punctuation omitted). The plain text and structure of the (a)(4) exception is limited to classroom work done with the authorization of a teacher. This is not a blanket exception for all school-related – or even school-authorized – uses. Whether or not the exception requires classroom work to be done in the classroom, it clearly requires the work to arise from the classroom environment and with the authorization of the classroom teacher. There is no allegation or argument that the use of the cannon did so here. Not even the greatest possible respect for the life lessons learned through the game of football can warrant interpreting the statutory term "classroom work" as applying to firing a cannon on a football field as part of a football game without any relation to a classroom or a teacher. The (a)(4) exception is not applicable.

b.   Defendants' hypothetical erroneous interpretation of OCGA § 16-11-127.1 does not entitle them to immunity.

The trial court held that Defendants had discretion to conclude that it would be absurd to read OCGA § 16-11-127.1 as (1) allowing teachers to bring cannons into classrooms while (2) prohibiting administrators from allowing cannons to be present

outdoors.[1] But as we have already explained, that is precisely what the text of the statute means. Defendants lack the authority to construe it otherwise, so they cannot be granted immunity for having done so.

We observed nearly 20 years ago that "[t]he time and effort our Legislature has spent in perfecting [OCGA § 16-11-127.1] reflects the inherent difficulty in developing restrictions when education is involved." *In the Interest of R.F.T.*, 228 Ga. App. 719, 720 (1) (492 SE2d 590) (1997) (physical precedent only). At the time of that observation, the General Assembly had amended this Code section three times since its 1992 enactment; in the 19 years since our decision in *R.F.T.*, the General Assembly has amended OCGA § 16-11-127.1 an additional 16 times. *See* Ga. L. 1999, p. 362, § 1; Ga. L. 2000, p. 20, § 6; Ga. L. 2000, p. 1630, § 4; Ga. L. 2003, p. 140, § 16; Ga. L. 2008, p. 533, § 3; Ga. L. 2008, p. 1199, § 5; Ga. L. 2009, p. 8, § 16; Ga. L. 2010, p. 463, § 2; Ga. L. 2010, p. 963, § 1-4; Ga. L. 2013, p. 294, § 4-10; Ga. L. 2014, p. 432, § 1-1; Ga. L. 2014, p. 599, § 1-6; Ga. L. 2015, p. 5, § 16; Ga. L. 2015, p. 274, § 1; Ga. L. 2015, p. 422, § 5-27; Ga. L. 2015, p. 805.

---

[1]The trial court observed that Defendants almost certainly did not perform any such analysis, and likely instead simply retained the cannon-firing traditions of their predecessors. It is unclear what relevance to this lawsuit might be found in immunity for an act Defendants did not perform.

Whether or not the Appling County school board and school superintendent agree with the precise balance the General Assembly has struck, acting contrary to that balance far exceeds any possible construction of the scope of their authority. "The doctrine of separation of powers is an immutable constitutional principle which must be strictly enforced. Under that doctrine, statutory construction belongs to the courts, legislation to the legislature." *Allen v. Wright*, 282 Ga. 9, 12 (1) (644 SE2d 814) (2007). Neither of those powers are granted to school boards or superintendents.[2] Because official immunity applies only to discretionary acts within the scope of Defendants' authority, the trial court erred in concluding that Defendants were entitled to immunity.

2.      Compliance with the criminal law of this state is a ministerial duty, and Defendants are not entitled to official immunity at this point in the case.

---

[2]Defendants cite *Grammens v. Dollar* as precedent for school officials' discretionary authority to construe statutes. 287 Ga. 618 (697 SE2d 775) (2010). But *Grammens* did not involve a statute at all. There, a school policy required protective eyewear to be worn when explosive materials were being used, and our Supreme Court held that because the policy did not define "explosive materials," the language of the policy imposed a discretionary duty on teachers to determine what materials qualified. This bears no resemblance whatsoever to determining that the plain language of a criminal statute need not be followed because of a belief that it is absurd.

Because we conclude that Defendants did not perform a discretionary act within the scope of their authority, we next consider whether Boatwright has sufficiently pled negligent breach of a ministerial duty.

"A school official does not have legal discretion to participate in a crime[.]" *Caldwell v. Griffin Spalding Cnty. Bd. of Educ.*, 232 Ga. App. 892, 893 (503 SE2d 43) (1998) (physical precedent only). "Compliance with the law is mandatory, and in that sense arguably 'ministerial.'" *Id.* at 894. This case is necessarily different from those in which the defendants were accused of failing to stop third parties from violating the law, because here Defendants are the ones accused of violating the law. *Compare Caldwell*, 232 Ga. App. at 894 (rejecting claim based on alleged failure to prevent hazing); *Teston v. Collins*, 217 Ga. App. 829, 830 (1) (459 SE2d 452) (1995) (rejecting claim based on alleged failure to enforce loitering statute). OCGA § 16-11-127.1 does not impose a ministerial duty on school officials to enforce it against third parties, but it does impose a ministerial duty of personal compliance.

It is another question, however, whether Boatright has sufficiently pled that Defendants violated that statute in their individual capacities. It is unclear from Boatwright's complaint exactly what Defendants are accused of having done – in their individual capacities – that violated OCGA § 16-11-127.1. Boatwright alleges

10

several times that Defendants "allowed" the cannon on school property, but that is not action criminalized by the statute. The statute prohibits "any person" from "carry[ing]," "possess[ing]," or "hav[ing] under such person's control" any "weapon" "within a school safety zone [or] at a school function...." OCGA § 16-11-127.1(b)(1). Boatwright does not allege that any Defendant actually carried or possessed the cannon individually during the incident in question. Under Boatwright's complaint, however, it is at least conceivable that Defendants may have had the cannon within their individual "control." Given that Boatwright alleges that the school district owns the cannon, and that Defendants (at least some of whom together manage and control the school district, *see*, *e.g.*, GA. CONST. Art. VIII, Sec. V, Para. II) knew of and encouraged its use at football games, we cannot say in this posture as a matter of law "that the allegations of the complaint disclose with certainty that [Boatwright] would not be entitled to relief under any state of provable facts asserted in support." *Austin v. Clark*, 294 Ga. 773, 775 (755 SE2d 796) (2014).

Defendants' erroneous interpretation of the statute is not a discretionary act entitling them to an official immunity defense. Because we find the trial court erred in granting the motion to dismiss on these grounds, we reverse the decision of the trial court granting Defendants' motion to dismiss.

11

*Judgment reversed. Dillard and McFadden, JJ., concur.*