305 Ga. 523
FINAL COPY

S18A1231.  WYNO v. LOWNDES COUNTY et al.

Bᴇᴛʜᴇʟ, Justice.

In this case, Jason Wyno challenges the constitutionality of former OCGA § 4-8-30, a portion of the former Dangerous Dog Control Law which purports to exempt local governments and their employees from liability arising from their enforcement of, or failure to enforce, that law and local dog-control ordinances.  Wyno argues that this statute impermissibly extends the official immunity of local government employees provided in Article I, Section II, Paragraph IX (d) of the Georgia Constitution of 1983 ("Paragraph IX (d)") because former OCGA § 4-8-30 is not "a State Tort Claims Act."

However, we do not reach that constitutional question in this case because we determine that the trial court erred in its preliminary determination that the relevant duties imposed by the former Dangerous Dog Control Law and the Lowndes County Animal Control Ordinance in effect at

the time of the incident giving rise to this suit were ministerial in nature. We determine instead that the record before us demonstrates that the relevant acts of the County Employees were discretionary. Moreover, because the record before us does not contain evidence that the individual defendants acted with malice or intent to injure, they are protected from Wyno's lawsuit by the official immunity provided by Paragraph IX (d). We therefore affirm the grant of summary judgment in favor of the defendants, although for reasons different than relied upon by the trial court.

1. *Background*

On December 8, 2011, Misty Wyno was attacked and killed by a dog owned by one of her neighbors. In the years leading up to the attack, numerous complaints about dogs at the neighbor's address had been filed with the Lowndes County Animal Control office.

Following Misty Wyno's death, Jason Wyno brought a wrongful death action against the dog's owners, Lowndes County, and four individual Lowndes County Animal Control employees — Weyman Bozeman, Eric Sharp, Emanuel Shaw, and Linda Patelski ("County Employees") — in both their official and individual capacities. The complaint alleged that Lowndes

2

County and the County Employees negligently failed to perform ministerial duties, negligently failed to provide police protection, negligently created and failed to abate a nuisance, were negligent in their control of allegedly dangerous dogs, and were negligent per se by violating several provisions of the Lowndes County Animal Control Ordinance. The complaint also made a demand for punitive damages and alleged that Lowndes County and the County Employees "acted with actual malice and/or an intent to injure in repeatedly refusing to investigate or take any action with regards to the dangerous dogs[.]"

Lowndes County asserted the defense of sovereign immunity both for itself and for its employees in their official capacities. The trial court dismissed Lowndes County and the County Employees on that basis.

Additionally, Lowndes County and the County Employees asserted that they were immune from liability due to the provisions of the Dangerous Dog Control Law in effect in 2011, specifically former OCGA § 4-8-30.[1] The trial

---

[1] At all times relevant to this appeal, former OCGA § 4-8-30 provided:

It is the intent of the General Assembly that the owner of a dangerous dog or potentially dangerous dog shall be solely liable for any injury to or death of a person caused by such dog. Under no circumstances shall a local government or any employee or official of a local government which enforces or fails to enforce the provisions of this article be held liable for any damages to any person who suffers an

3

court dismissed the suit against the County Employees in their individual capacities, finding that former OCGA § 4-8-30 barred the action against any party except the dog's owners.

The Court of Appeals affirmed the dismissal of the action against Lowndes County and the County Employees in their official capacities. See *Wyno v. Lowndes County*, 331 Ga. App. 541 (771 SE2d 207) (2015). However, the Court of Appeals reversed the dismissal of the action against the County Employees in their individual capacities, noting that the trial court had failed to rule specifically on Wyno's constitutional challenge to former OCGA § 4-8-30. *Wyno*, 331 Ga. App. at 546 (3) (b).

Following remand for that purpose, and after the parties conducted discovery, the trial court denied the County Employees' motion for summary judgment. In so doing, it determined that the County Employees' duties

injury inflicted by a dog that has been identified as being a dangerous dog or potentially dangerous dog or by a dog that has been reported to the proper authorities as being a dangerous dog or potentially dangerous dog or by a dog that a local government has failed to identify as a dangerous dog or potentially dangerous dog or by a dog which has been identified as being a dangerous dog or potentially dangerous dog but has not been kept or restrained [as provided by law] or by a dangerous dog or potentially dangerous dog whose owner has not maintained insurance coverage or a surety bond as required [by law].

4

relevant to this action were ministerial in nature, thus subjecting them to personal liability for negligence. However, in a later order, the trial court found former OCGA § 4-8-30 to be constitutional and again dismissed each claim against the County Employees in their individual capacities.

Here, we treat the order of dismissal in favor of the County Employees as a ruling on a motion for summary judgment. We do so because, although the trial court dismissed the suit based on assertions in the pleadings of Lowndes County and the County Employees regarding the effect of former OCGA § 4-8-30, it would not have reached that question had it granted the County Employees' motion for summary judgment. Such motion, in the first instance, prompted the trial court to consider matters outside the pleadings, including depositions given by Wyno and each of the County Employees relevant to the question of whether the duties imposed by the Lowndes County Animal Control Ordinance were discretionary or ministerial in nature. See *Johnson v. RLI Ins. Co.*, 288 Ga. 309, 310 (704 SE2d 173) (2010).

2. *Official Immunity for Ministerial and Discretionary Acts*

5

Whether a public employee is afforded immunity is governed in part by whether the act in question is ministerial or discretionary. As this Court has previously discussed:

> [U]nder the English common law, although the government was cloaked with sovereign or governmental immunity, public officials and employees were personally liable for torts they committed in the performance of their duties. However, over the years in this country the trend has been in the opposite direction. As a result, there has developed what has become known as qualified immunity or official immunity for public officials and employees. The doctrine of official immunity, developed primarily in Georgia through case law, provides that while a public officer or employee may be personally liable for his negligent ministerial acts, he may not be held liable for his discretionary acts unless such acts are wilful, wanton, or outside the scope of his authority.

*Gilbert v. Richardson*, 264 Ga. 744, 752 (6) (452 SE2d 476) (1994).

On November 6, 1990, the people of Georgia ratified an amendment to the 1983 Constitution which incorporated the concept of official immunity for discretionary and ministerial acts and provided the General Assembly with a means of varying that immunity by legislative act. The resulting provision, Article I, Section II, Paragraph IX (d), provides:

> Except as specifically provided by the General Assembly in a State Tort Claims Act, all officers and employees of the state or

6

its departments and agencies[2] may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions. Except as provided in this subparagraph, officers and employees of the state or its departments and agencies shall not be subject to suit or liability, and no judgment shall be entered against them, for the performance or nonperformance of their official functions. The provisions of this subparagraph shall not be waived.

That provision took effect in 1991, and, "[w]ith passage of the 1991 amendment, the immunity enjoyed by public officers and employees was made part of the State Constitution." *Gilbert*, 264 Ga. at 752 (6). Such immunity, as we have previously held, "looks a lot like" the body of decisional law on official immunity that predated the 1991 amendment. *Lathrop v. Deal*, 301 Ga. 408, 440 (III) (C) (801 SE2d 867) (2017).

3.  *The Relevant Duties Imposed by the Lowndes County Animal Control Ordinance are Discretionary*

In this case, following remand from the Court of Appeals, the trial court ruled that the relevant sources of law imposed ministerial duties on the

---

2

` We have previously held that the phrase "state or any of its departments or agencies" in Article I, Section II, Paragraph IX (a) also includes counties. See *Gilbert*, 264 Ga. at 747 (2). We have more recently noted that the immunity afforded by Article I, Section II, Paragraph IX (d) also "applies to county employees." *Ridley v. Johns*, 274 Ga. 241, 243 (552 SE2d 853) (2001).

County Employees and that the negligent performance of (or failure to perform) such duties subjected the County Employees to personal liability. We disagree with that determination.

Whether, under the relevant facts, the County Employees are entitled to official immunity is a question of law for the court to decide. *Keenan v. Plouffe*, 267 Ga. 791, 793 (1) n.1 (482 SE2d 253) (1997), overruled on other grounds by *Shekhawat v. Jones*, 293 Ga. 468 (746 SE2d 89) (2013). Because we consider this determination following the denial of the County Employees' motion for summary judgment, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to Wyno, the nonmovant. *Johnson Street Properties v. Clure*, 302 Ga. 51, 52 (1) (805 SE2d 60) (2017).

Pertinent to this inquiry,

> a ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.

8

(Citation and punctuation omitted.) *Austin v. Clark*, 294 Ga. 773, 774 (755 SE2d 796) (2014). "[T]he term 'ministerial act,' as it applies to the waiver of an individual's official immunity under [Paragraph IX (d)], is defined by the character of the specific action taken by the government official or employee and the amount of discretion and judgment applied in executing a specific duty." *City of Atlanta v. Mitcham*, 296 Ga. 576, 582 (2) (769 SE2d 320) (2015).

> A ministerial duty may be established by evidence such as a written policy, an unwritten policy, a supervisor's specific directive, or a statute. Procedures or instructions adequate to cause an act to become merely ministerial must be so clear, definite[,] and certain as merely to require the execution of a relatively simple, specific duty.

(Citations and punctuation omitted.) *Roper v. Greenway*, 294 Ga. 112, 114-115 (751 SE2d 351) (2013).

The trial court's determination that the duties at issue here are ministerial in nature turned primarily on its reading of Section XIII (a) of the Lowndes County Animal Control Ordinance, which provides:

> Upon receiving a report of a dangerous dog or potentially dangerous dog . . . an Animal Services Officer shall make such investigations, inquiries[,] and classifications of a dangerous dog

9

or potentially dangerous dog[3] with regard to such report or investigation as may be necessary to carry out the provisions of [the ordinance relating to Dangerous Dog Control].

Additionally, the court relied on explanations of these duties by the County Employees in their depositions in ruling that the duties imposed were ministerial in nature.

---

[3] Section III (a) (16) of the Lowndes County Animal Control Ordinance defines "dangerous dog" as "any dog that, according to the records of an appropriate authority, inflicts a severe injury on a human being without provocation on public or private property, or which aggressively bites, attacks, or endangers the safety of humans without provocation after the dog has been classified as a potentially dangerous dog and after the owner has been notified of such classification." Section III (a) (32) defines "potentially dangerous dog" as "any dog that, without provocation, bites a human being on public or private property or acts in a threatening or aggressive manner towards a person that places said person in reasonable apprehension of immediately receiving a violent injury." Section III (a) (36) defines "records of an appropriate authority" as "records of any state, county, or municipal law enforcement agency; records of any federal or state department of agriculture; records of any county or municipal animal control agency; records of any state, county[,] or municipal board or department of health; records of any federal, state, or local court; or records of an Animal Services Officer, or of a dog control officer provided for in Georgia's Dangerous Dog Control Law provided for in this ordinance." Section III (a) (39) defines "severe injury" as "any physical injury that results in broken bones or disfiguring lacerations requiring multiple sutures or cosmetic surgery or a physical injury that results in death." Section III (a) (46) defines "vicious dog" as a "dog which, without provocation, has bitten or attempted to bite any person or another animal." Section III (a) (48) defines "without provocation or unprovoked" to mean "that the animal at issue was not or had not been assaulted, teased, tormented, or abused by the person or domestic animal which was the subject of the act by the animal at issue, or that the animal at issue was not coming to the aid of or defending its young or was not acting against a person who was willfully trespassing or committing another willful tort or criminal act on the premises of such animal at issue's owner or custodian."

Statements in those depositions established that each complaint made to Lowndes County Animal Control is recorded on a complaint form by a dispatcher and passed along to an animal control officer. Such complaints note the behavior of a dog that the complainant seeks to have addressed by Lowndes County Animal Control. It is then up to the assigned animal control officer to assess the problem (including, when possible, by speaking to the complainant) and make some determination as to what remedy, if any, is appropriate. That process involves an initial determination by the animal control officer as to whether the complained-of dog meets the ordinance's definition of a "dangerous dog," a "potentially dangerous dog," or a "vicious dog." If the animal control officer determines that the dog in question is "dangerous" or "potentially dangerous," the officer is to report that determination to a supervisor. The responding officer also has the authority to impound the complained-of dog, issue a citation to the owner of such a dog, or issue a verbal or written warning to the owner. Once a report is provided to the supervisor that a dog should be classified as "dangerous" or "potentially dangerous," the supervisor determines whether the complaint should be presented to the county Animal Control Board. If the investigating animal control officer can confirm that the dog is properly confined and the

11

complainant does not request additional action, a complaint is not forwarded to the Animal Control Board.

If the animal control officer cannot locate the owner of the dog when investigating the complaint, the general practice is to leave a "door hanger" at the owner's residence notifying the owner that a complaint had been filed and that the owner should contact the animal control officer promptly. The record established that sometimes the animal control officer would follow up with the dog's owner after leaving a door hanger. However, if the officer found the dog to be confined when initially responding to the complaint, the officer had the discretion not to follow up and sometimes did not do so. Although the record established that the animal control supervisor had instructed the officers to conduct follow-ups, there was nothing in the animal control ordinance or any written procedure that required such a follow-up.[4] In his deposition, Officer Eric Sharp stated that "we have so many calls, sometimes it's hard to follow up on some. You have to pick and choose which ones you're going to follow up on a lot of times[.]" Likewise, Lowndes County Director of Animal Services Linda Patelski stated in her

---

[4] The record reflects that, in addition to the Lowndes County Animal Control Ordinance, the animal control office created a standard operating procedure that was in effect at the time of the incident in which Misty Wyno was killed.

12

deposition that whether an officer follows up "depends upon what the officer feels it warrants" and that it is "up to the officer's discretion whether they felt it was warranted or not to do a follow-up."

As with many law enforcement duties,[5] the duties described above are discretionary in nature. Although the ordinance directs animal control officers to make investigations and inquiries upon receiving a complaint, such investigation is for the purpose of determining whether the report they have received describes a dog that is vicious, dangerous, or potentially dangerous, as described in the Animal Control Ordinance. This initial determination necessarily requires the exercise of judgment and the application of a legal standard to specific facts before determining that further action is required. See *Grammens v. Dollar*, 287 Ga. 618, 620-621 (697 SE2d 775) (2010) ("Where the written policy requires the public official to exercise discretion in the implementation of the written policy, the policy does not require the performance of a ministerial duty.").[6] Then, even if the

_____

[5] See, e.g., *Campbell v. Goode*, 304 Ga. App. 47, 49 (1) (695 SE2d 44) (2010) (police officer's decision whether to investigate suspicious activity is a discretionary act).

[6] Compare *Nelson v. Spalding County*, 249 Ga. 334, 336 (2) (a) (290 SE2d 915) (1982) ("[Employee's] duty in regard to stop signs is merely to replace those that are missing or to erect new signs where *others determine* it is necessary. The act of replacing and repairing signs is ministerial and not discretionary in its nature. Once

officer determines that a dog is "dangerous" or "potentially dangerous," the officer has a range of enforcement options at his or her disposal, including issuing warnings, writing citations, or seizing the complained-of animal. Thus, the responding officer has significant discretion with regard to the handling of each complaint.

Moreover, although evidence in the record established that animal control officers were directed informally to report complaints regarding dangerous or potentially dangerous dogs to a supervisor, such duties only arose if, as an initial matter, the animal control officer determined that the complaint pertained to a dangerous dog or a potentially dangerous dog. Thus, although internal policy set forth the subsequent steps to be followed in the handling of any such complaints, determining whether a complaint required reporting up the chain of command and further investigation was, in the first instance, based on the judgment and analysis of the animal control officer investigating the complaint and his or her determination as to whether a dog was vicious, dangerous, or potentially dangerous, as described in the ordinance. See *Grammens*, 287 Ga. at 621 ("Because the [policy at issue]

_____

[the employee] is notified that a sign is missing his duty is to replace it; this duty does not involve the exercise of a discretion on his part." (emphasis supplied)).

required the [employee] to perform a discretionary act to determine if the policy was applicable, the policy did not impose a ministerial duty upon the [employee].").[7]

Based on the foregoing, we determine that the relevant duties imposed on the animal control officers here were discretionary in nature. But "the distinction between discretionary and ministerial acts does not completely foreclose [the County Employees'] potential liability; [they] may be held liable if [the] discretionary act was malicious" or taken with an intent to injure Jason or Misty Wyno. *Roper*, 294 Ga. at 116.

In the context of Georgia's official immunity doctrine, "'actual malice' requires a deliberate intention to do wrong." *Merrow v. Hawkins*, 266 Ga. 390, 391 (467 SE2d 336) (1996). It "does not include 'implied malice,' i.e., the reckless disregard for the rights or safety of others." *Murphy v. Bajjani*,

---

[7] Compare *Meagher v. Quick*, 264 Ga. App. 639, 641-644 (1) (594 SE2d 182) (2003). In that case, the Court of Appeals determined that the Family Violence Act established a ministerial duty on the part of law enforcement officers to issue a Family Violence Report "whenever an incident of possible family violence is investigated by police . . . whether founded or unfounded[.]" Id. at 643 (1). The statute at issue in that case, OCGA § 17-4-20.1 (c), provides in relevant part that "[w]henever a law enforcement officer investigates an incident of family violence, whether or not an arrest is made, the officer shall prepare and submit . . . a written report of the incident entitled 'Family Violence Report.'" The statute goes on to specify thirteen items that any such report must include.

282 Ga. 197, 203 (4) (647 SE2d 54) (2007). Instead, actual malice requires more than "harboring bad feelings" or "ill will" about another; "rather, ill will must also be combined with the intent to do something wrongful or illegal." *Adams v. Hazelwood*, 271 Ga. 414, 415 (2) (520 SE2d 896) (1999). Moreover,

> [t]he phrase "actual intent to cause injury" has been defined in a tort context to mean an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury. This definition of intent contains aspects of malice, perhaps a wicked or evil motive.

(Citations and punctuation omitted.) *Kidd v. Coates*, 271 Ga. 33, 33 (518 SE2d 124) (1999).

The record established that a number of complaints were filed regarding dogs located at the address where Misty Wyno was killed. The first such complaint was filed on November 25, 2010. Animal Control Officer Bozeman responded to this complaint but found no owner at home. Officer Bozeman left a door hanger at the residence alerting the owner that a complaint had been made about a dog, that it needed to be confined, and that the owner should contact Officer Bozeman. Officer Bozeman spoke with three witnesses who reported that a dog from that address had behaved

16

aggressively. When he came to the residence, he noted that the dogs were not running loose but were inside the residence. After responding to the complaint, Officer Bozeman determined that the dogs were potentially dangerous but did not report this to his supervisor.

Officer Bozeman responded to a second complaint the following day, November 26, 2010, that dogs from the residence were running loose. Officer Bozeman found no one at home and again left a door hanger asking the owner of the dogs to contact him. Although he once again felt the dogs could be deemed "potentially dangerous," he did not report this to his supervisor.

A third complaint about dogs from that address was made on March 3, 2011. The animal control officer who responded to the complaint, Officer Eric Sharp, left a door hanger at the residence and noted in his report that no one was home and that the dogs at the residence were confined. Another complaint was filed regarding dogs at the same residence on August 16, 2011. As with the March 3 complaint, the responding officer, Officer Sharp, found no one at home and left a door hanger at the residence. A fifth complaint was filed on September 20, 2011. Officer Bozeman responded to that call and issued a verbal warning to the dog's owner.

Officer Bozeman also responded to calls on October 20, 2011, regarding a dog at the same address. That day, Officer Bozeman spoke to the complainant but could not locate the owner, so he left a door hanger at the residence. After responding to that call, he determined that the dog complained of was potentially dangerous, but he did not report this to his supervisor. The owner of the dog contacted Officer Bozeman and assured him that her dog had been confined.

Officer Bozeman later responded to a call at that address on November 7, 2011. The report from the complainant noted that it had been a "repeat problem," Officer Bozeman again determined that the dog complained of was a potentially dangerous dog, and again left a door hanger at the residence when he could not locate the owner. The owner of the dog again contacted Officer Bozeman and again assured him that her dog had been confined.

Animal Control Officer Emanuel Shaw responded to a later complaint on November 15, 2011, at the same address. He could not locate the owner, but noted that the dog at the address was confined indoors. Officer Shaw left a door hanger at the residence.

18

Linda Patelski served as the Director of Animal Services throughout this period. However, she was not the responding officer on any of the calls noted above. The record does not indicate she had any contact with either Jason or Misty Wyno.

As summarized above, the record before us is devoid of any evidence that any of the County Employees acted with malice or intent to harm Jason or Misty Wyno. In his deposition, Jason Wyno indicated that he did not know any of the County Employees. Jason Wyno also stated that neither he nor Misty Wyno nor anyone they knew had ever made any complaints to any of the County Employees regarding the dog that attacked Misty Wyno. Moreover, nothing in the record established that any of the County Employees harbored any ill will or malice toward Jason or Misty Wyno or that they intentionally conducted their investigations of dog complaints in a manner so as to harm them.

Thus, because Wyno has not satisfied his burden of demonstrating in the record that any of the County Employees engaged in malicious conduct or intended to harm Jason or Misty Wyno, the immunity provided by Paragraph IX (d) bars his action against the County Employees. We

19

therefore affirm the trial court's grant of summary judgment in favor of the County Employees.

Judgment affirmed. All the Justices concur.

NAHMIAS, Presiding Justice, concurring.

The Court concludes that the appellees — four county employees — have official immunity from Wyno's lawsuit under Article I, Section II, Paragraph IX (d) of the Georgia Constitution of 1983 as amended in 1991. As explained in footnote 2 of the Court's opinion, that conclusion is premised on the proposition that Paragraph IX — which addresses the sovereign and official immunity of "the state," its "departments and agencies," and "officers and employees of the state and its departments and agencies" — applies to counties and their employees. That proposition is supported by decisions of this Court, and we have also held that Paragraph IX applies to municipalities and their employees.

As the Georgia Municipal Association discusses in its amicus curiae brief, however, the foundational precedents for those holdings were sharply divided. See Nelson v. Spalding County, 249 Ga. 334 (290 SE2d 915) (1982) (counties under 1974 constitutional amendment); Toombs County v. O'Neal, 254 Ga. 390 (330 SE2d 95) (1985) (counties under 1983 Constitution); Hiers v. City of Barwick, 262 Ga. 129 (414 SE2d 647) (1992) (municipalities under 1983 Constitution); City of Thomaston v. Bridges, 264

1

Ga. 4 (439 SE2d 906) (1994) (municipalities under 1991 constitutional amendment). See also <u>Gilbert v. Richardson</u>, 264 Ga. 744 (452 SE2d 476) (1994) (less-divided opinion as to counties under 1991 constitutional amendment). And these holdings seem to render nugatory another provision of our Constitution that speaks expressly of the immunity of counties and municipalities and gives the General Assembly wider authority to regulate such immunity. See Ga. Const. of 1983, Art. IX, Sec. II, Par. IX ("The General Assembly may waive the immunity of counties, municipalities, and school districts by law."). It may be appropriate to reconsider some or all of these precedents at some point, but the parties have not asked us to do so in this case, and there is no need to, because if Paragraph IX (d) of Article I, Section II does not apply to county employees, there would be no question that former OCGA § 4-8-30 of the former Dangerous Dog Control Law precludes Wyno's lawsuit.[8] With that said, I can join the Court's opinion in

---

[8] This would be true whether former OCGA § 4-8-30 gave local government employees official immunity from suit (as has previously been assumed in the litigation of this case) or simply made clear that the former Dangerous Dog Control Law did not authorize a tort cause of action against local government employees for violation of their duties created by the Law (as the appellees argue in a supplemental brief).

2

full.

I am authorized to state that Justice Blackwell, Justice Boggs, and Justice Peterson join in this concurrence.

Decided February 18, 2019 — Reconsideration denied March 13, 2019.

Dangerous Dog Control Law; official immunity. Lowndes Superior Court. Before Judge Hardy.

O. Wayne Ellerbee; John G. Edwards, for appellant.

Elliott, Blackburn & Gooding, James L. Elliott, for appellees.

Rusi C. Patel, Susan J. Moore; G. Joseph Scheuer, Kelly L. Pridgen, Larry W. Ramsey, Jr., amici curiae.