**THIRD DIVISION**
**DOYLE, P. J.,**
**HODGES and WATKINS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**March 10, 2025**

# In the Court of Appeals of Georgia

A24A1331. WILSON v. ANDERSON et al.

WATKINS, Judge.

Ashley Wilson filed suit against the principal and vice principals of her daughter A. L.'s school after A. L. was stabbed multiple times by a classmate at school. Christine Anderson, Lois Reed, Zanetta Walker, and Donald Helm (collectively the "Administrators") moved to dismiss Wilson's complaint on the ground that they were entitled to official immunity. The trial court granted the Administrators' motion, and Wilson timely appealed. For the reasons contained herein, we reverse the trial court's order of dismissal.

A motion to dismiss on sovereign immunity grounds is based upon the trial court's lack of subject matter jurisdiction, and as a result, a trial court is entitled to make factual findings necessary to resolve the jurisdictional issue. When the trial court determines the jurisdictional issue based upon conflicting facts, the court's determination is reviewed on

appeal under the any evidence rule. In this case, however, the trial court did not make any factual findings, and therefore we accept [Wilson's] allegations as true for purposes of this appeal.[1]

So viewed, the record shows that on March 14, 2023, School Resource Officer ("SRO") Renee Nelson notified the administration of Ola Middle School that a student, C. S., had a knife at school and was making threats to use the knife to injure fellow students, including A. L. Wilson alleges the Administrators did not investigate this threat. The next day, SRO Cindy Johnson notified the administration that C. S. again had a knife at school and was threatening to use it to injure students, including A. L. According to the complaint, Administrators did not investigate this threat either.[2] On that day, when A. L. was walking to the gymnasium, C. S. began to threaten A. L. and attacked her in the gymnasium. A. L. was stabbed at least 14 times during the attack.

Alleging negligence, Wilson filed suit against the Administrators in her individual capacity as well as in her capacity as the parent and guardian of A. L. The Administrators moved to dismiss, claiming the trial court lacked subject matter jurisdiction because they

---

[1] (Citations and punctuation omitted.) *Bd. of Regents of Univ. System of Ga. v. Brooks*, 324 Ga. App. 15, 16 (749 SE2d 23) (2013).

[2] The Administrators deny that they received notice of the threat or failed to investigate; however, given our standard of review, for purposes of this motion, we accept Wilson's allegations as true.

were entitled to official immunity. The trial court agreed and dismissed Wilson's complaint. This appeal followed.

1. Wilson argues that the trial court erred in dismissing her complaint because the Administrators were not entitled to official immunity. We agree.

The Georgia Constitution provides, in part:

Except as specifically provided by the General Assembly in a State Tort Claims Act, all officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages *caused by the negligent performance of, or negligent failure to perform, their ministerial functions* and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions. Except as provided in this subparagraph, officers and employees of the state or its departments and agencies shall not be subject to suit or liability, and no judgment shall be entered against them, for the performance or nonperformance of their official functions.[3]

In the absence of malice or actual intent to injure, which is not alleged here, "public officials are immune from damages that result from their performance of discretionary

---

[3] (Emphasis supplied.) Ga. Const. of 1983, Art. I, Sec. II, Par. IX (d).

functions[.]"[4] "[T]his immunity for discretionary acts does not extend to ministerial acts."[5]

"Whether the act of a public official is ministerial or discretionary is determined by the facts of each individual case, particularly the facts specifically relevant to the official's act or omission from which the alleged liability arises."[6] "Where a situation involves multiple official acts, some may be discretionary; others may be ministerial."[7]

> [A] discretionary duty requires the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way *not specifically directed*. Courts must distinguish between rule making or deliberation in a supervisory capacity and a specific task which became necessary after the discretionary decision was made. *The execution of a specific task is characterized as ministerial even though the manner in which it is accomplished is left to the employee's discretion*.[8]

---

[4] (Citation and punctuation omitted.) *Cotton v. Smith*, 310 Ga. App. 428, 434 (714 SE2d 55) (2011).

[5] *Boatright v. Copeland*, 336 Ga. App. 107, 108 (783 SE2d 695) (2016).

[6] (Citation omitted.) *Grammens v. Dollar*, 287 Ga. 618, 620 (697 SE2d 775) (2010).

[7] *Meagher v. Quick*, 264 Ga. App. 639, 642 (1) (594 SE2d 182) (2003).

[8] (Emphasis supplied.) *Cotton*, 310 Ga. App. at 434.

As the Supreme Court of Georgia explained in defining ministerial acts: "These acts as simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty, are ministerial, that is, if the condition 'A,' then the required response 'B.'"[9] "A ministerial duty may be established by evidence such as a written policy, an unwritten policy, a supervisor's specific directive, or a statute."[10]

Here, Wilson points to a provision of the Henry County School District "School Year 2022-2023 Student and Parent Handbook" (the "Handbook"), which she contends should have triggered further action by the Administrators.[11] Specifically, the Handbook provides:

> Any teacher or other school employee who, in the exercise of his or her personal judgment and discretion, believes he or she has reliable information that would lead a reasonable person to suspect that someone is a target of bullying shall immediately report it to the school principal. *Any report will be appropriately investigated* by the administration based on the nature of the

---

[9] *Meagher*, 264 Ga. App. at 644 (1).

[10] (Citation and punctuation omitted.) *Wyno v. Lowndes County*, 305 Ga. 523, 527-528 (3) (824 SE2d 297) (2019)

[11] The Administrators point to other provisions in the Handbook which they contend create discretionary authority, but Wilson does not rely on those provisions to establish a ministerial duty.

complaint and in a timely manner to determine whether bullying has occured, whether there are other procedures related to illegal harassment or discrimination that should be implemented and what other steps should be taken.

As is relevant here, the Handbook defines bullying to include "[a]ny willful attempt or threat to inflict injury on another person, when accompanied by an apparent present ability to do so[.]"

We hold that one student having a knife on campus and threatening to use it against another student on campus meets the definition of "bullying" as contained in the Handbook. Given our standard of review for purposes of this motion, we assume as true that two SROs reported C. S.'s threats against A. L. to the administration.

Accordingly, we must analyze whether a report of bullying triggers a ministerial duty for the Administrators. We hold that it does, even though the Administrators subsequently enjoy discretion as to the nature of the investigation. As this Court has held, while "the act of establishing a policy in the first place is discretionary, the act[ ] of following established polic[y] . . . [is] ministerial."[12] The policy at issue here certainly contains terms that ultimately confer discretion as to how the investigation proceeds. Nonetheless,

---

[12] *Wanless v. Tatum*, 244 Ga. App. 882, 884 (536 SE2d 308) (2000).

the introduction of an ambiguous or undefined term can render a policy a discretionary duty if the official is required to exercise personal deliberation and judgment by examining the facts and reach a reasoned conclusion with regard to the applicability of the dictates of the written policy. But this generally occurs when the term or ambiguity requires the public official to use their discretion to determine *whether the policy applies to the situation in the first place*. When the policy clearly mandates a task to be done but leaves some discretion to the employee as to the *manner* in which to accomplish that task, the execution of that specific task is characterized as ministerial even though the *manner* in which it is accomplished is left to the employee's discretion.[13]

Here, the Handbook specifically requires that "[a]ny report [of bullying] will be appropriately investigated by the administration[.]" While the Handbook leaves it to the administration's discretion what level of investigation would be appropriate given "the nature of the complaint[,]" and that the investigation must occur "in a[n undefined] timely manner[,]" the Handbook clearly states that an investigation is required after a report of bullying is brought to the principal.[14] Accepting as true for purposes of this

---

[13] (Citations and punctuation omitted; emphasis supplied.) *Hall v. Acker*, 367 Ga. App. 411, 415-416 (885 SE2d 266) (2023).

[14] See *Hall*, 367 Ga. App. at 414-417 (holding that a school system policy which provided that, following the use of pepper spray on a "subject," "officers will flush the eyes and face of the affected subject with clean water as soon as possible after the subject is secured" to create a ministerial duty because it gave no discretion as to whether to flush the subject's eyes, despite providing discretion for determining when

appeal Wilson's allegation that the Administrators conducted no investigation following the reports of bullying, such was a violation of their ministerial duty pursuant to the Handbook; thus the Administrators have not demonstrated entitlement to official immunity. Although the Administrators argue their duty was discretionary, the cases they rely on are distinguishable; the conduct at issue in those cases was not clearly mandated by the policy in question.[15]

would be "as soon as possible") (punctuation omitted); *Wanless*, 244 Ga. App. at 883-884 (holding that a policy requiring employees to report and investigate citizen complaints of unsafe road conditions was ministerial even though it gave discretion to the employee as to when to conduct the investigation); *Lincoln County v. Edmond*, 231 Ga. App. 871, 875 (2) (501 SE2d 38) (1998) (A duty to remove a tree blocking a road was ministerial because "[i]t [was] undisputed that the road superintendent had a duty to remove the tree lying across [the road]. County policy granted [the superintendent] the discretion to choose the manner in which this task would be performed. Such 'discretion,' however, did not change the fact that the tree *must* be removed.") (emphasis supplied).

[15] See *Barnett v. Caldwell*, 302 Ga. 845, 849 (II) (809 SE2d 813) (2018) (affirming summary judgment and holding that a policy that prohibited teachers from leaving students "unsupervised" did not create a ministerial duty because the teacher had discretion as to what supervision was required); *Grammens*, 287 Ga. at 620 (trial court properly granted summary judgment where the policy concerning use of protective eye wear created discretionary duties because it did not define all the relevant terms and therefore required discretion); *Murphy v. Bajjani*, 282 Ga. 197, 199-200 (1) (647 SE2d 54) (2007) (holding that the trial court erred in denying a motion for judgment on the pleadings because the statute mandating creation of a school safety plan did not create a ministerial duty because schools had discretion as to how to create the plan); *Cameron v. Lang*, 274 Ga. 122, 126 (549 SE2d 341) (2001) (holding

While the Administrators may eventually be able to demonstrate compliance with

on the facts presented the officers were entitled to summary judgment on the issue of official immunity for their conduct in a high speed chase); *Blowe v. Roberts*, 371 Ga. App. 306-307 (1), 308 (3) (899 SE2d 439) (2024) (holding that failure to provide a safety document to students prior to a scientific demonstration did not breach a ministerial duty because the document referenced experiments not demonstrations and that various safety codes did not create a ministerial duty because they required "discretion on the part of [the chemistry teacher] to determine what action within a range of different actions she should take to meet the ordinance"); *Odum v. Harn*, 350 Ga. App. 572, 574-575 (829 SE2d 818) (2019) (affirming summary judgment and holding that a policy concerning safety policies for releasing students from a bus was discretionary because it required the bus driver to make multiple decisions); *Llewelyn v. Bryant*, 349 Ga. App. 274, 277 (825 SE2d 614) (2019) (reversing denial of summary judgment and holding that a policy requiring the school bus driver to supervise children as they exited buses created discretionary duties because it did not require the execution of specific tasks); *Golden v. Vickery*, 285 Ga. App. 216, 221 (645 SE2d 695) (2007) (affirming summary judgment and holding that a statute did not create ministerial duties concerning safety of high voltage power lines because the owner or operator had discretion as to what safeguards are necessary); *Reece v. Turner*, 284 Ga. App. 282, 285-286 (1) (643 SE2d 814) (2007) (holding that this Court was constrained to reverse the denial of summary judgment because a policy intended to protect students from a teacher who had previously engaged in sexual misconduct with a student created discretionary duties because it related to the supervision of teachers and students and therefore involved personal deliberation and judgment); *Harper v. Patterson*, 270 Ga. App. 437, 440 (2) (606 SE2d 887) (2004) (affirming a judgment on the pleadings because a policy which required a teacher to supervise the paraprofessional created discretionary duties because the manner in which to supervise teachers is discretionary); *Kelly v. Lewis*, 221 Ga. App. 506, 508 (471 SE2d 583) (1996) (affirming dismissal of a complaint against the school principal and a teacher who allegedly failed to appear for his assigned duty to monitor school entrance because their duties to monitor, supervise, and control students were discretionary).

9

their ministerial duties, they have not done so in the current procedural posture of the case.

2. Wilson also argues that OCGA § 20-2-1000, particularly subsection (b),[16] is unconstitutional and thus cannot be relied upon by the Administrators to avoid liability. The trial court did not rule on this argument, and appellate courts "will not rule on a constitutional question unless it clearly appears in the record that the trial court distinctly ruled on the point."[17] Thus, we do not rule on this argument or transfer the case to our Supreme Court.

*Judgment reversed. Doyle, P. J., and Hodges, J., concur.*

---

[16] "No educator shall be liable for any civil damages for, or arising out of, any act or omission concerning, relating to, or resulting from the discipline of any student or the reporting of any student for misconduct, except for acts or omissions of willful or wanton misconduct."

[17] (Citation and punctuation omitted.) *Marks v. State*, 280 Ga. 70, 74 (4) (623 SE2d 504) (2005).